NICHOLAS P. MORRISSEY & others vs. STATE BALLOT LAW COMMISSION.

Suffolk. July 21, 1942. — August 10, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Constitutional Law*, Initiative, Due process of law, Public rights and interests. *State Ballot Law Commission. Certiorari. Pleading, Civil*, Demurrer.

A demurrer in a certiorari proceeding on the ground that the petition and a return filed by the respondents did "not set forth any cause or matter . . . entitling the petitioners to relief" raised no question not presented by the petition and the return.

Even if certain grounds of objections to an initiative petition referred to the State ballot law commission by the Secretary of the Commonwealth set forth matters beyond the jurisdiction of the commission, the inclusion of such grounds in the objections did not affect the power of the commission to act upon other grounds stated in the objections that were within its jurisdiction.

At a hearing in certiorari proceedings against a commission upon the petition and return, averments in the petition with respect to the state of the evidence before the commission at public hearings, to rulings of law by the commission at such public hearings and to requests made by the petitioners to the commission that certain specific findings be incorporated in the record of the commission must be disregarded.

In a certiorari proceeding where the respondents filed both a return and a demurrer on the ground that the petition and the return did not set forth any cause entitling the petitioners to relief, the return could not be considered as amended or extended by any allegation in the petition.

The ultimate question for decision by the State ballot law commission upon objections referred to it under § 22A of G. L. (Ter. Ed.) c. 53, as amended, namely, whether for reasons set forth in that section an initiative petition should be rejected because it failed to have the required number of signatures of qualified voters, relates to a matter in which there is a public right, but not a private right.

The signers of an initiative petition do not have, either individually or collectively, a private right in the determination of questions before the State ballot law commission on objections filed with it under § 22A of G. L. (Ter. Ed.) c. 53, as amended, and consequently neither the statute nor action of the commission thereunder is rendered unconstitutional by reason of lack of provisions for notice to them of and an opportunity for them to be heard in the proceeding before the commission, or of provision for judicial review of action of the commission.

That portion of § 22A of G. L. (Ter. Ed.) c. 53, as amended, which purports to confer upon the State ballot law commission power to determine whether signatures appearing on an initiative petition were "placed thereon by fraud" was within the scope of the power granted to the Legislature by art. 48 of the Amendments to the Constitution.

Even if it be assumed that in acting under § 22A of G. L. (Ter. Ed.) c. 53, as amended, the State ballot law commission was required to base its findings only on evidence introduced before it, the validity of a decision, stated by it to have been "upon the evidence introduced at the hearings," was not affected by the fact that, in a "supplementary statement," filed after such determination, the commission described an "unhealthy background" disclosed at the hearing and stated that it passed on the issue on "evidence presented at the hearing and . . . facts that the commission uncovered itself during its own investigation."

The validity of a determination by the State ballot law commission in proceedings under § 22A of G. L. (Ter. Ed.) c. 53, as amended, that an initiative petition contained certain signatures placed on it by fraud was not shown to have been based on a finding of a violation of § 22B nor was its validity affected by a statement of the commission in a "supplementary statement" following the filing of such determination, in substance that the petition might have been found to be insufficient because of noncompliance with § 22B.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on June 24, 1942, for a writ of certiorari.

The case was heard by *Lummus*, J.

*F. B. Wallis*, (*R. E. Goodwin* with him,) for the petitioners.

*R. Clapp*, Assistant Attorney General, & *C. B. Rugg*, appearing with the consent of the respondents and of the Attorney General by permission of the court, for the respondents.

FIELD, C.J.    The ultimate issue involved in this case is whether a measure proposed as a law by initiative petition relating to a State fund for workmen's compensation (see *Opinion of the Justices*, 309 Mass. 571)`shall be submitted to the voters at the State election to be held in 1942. The constitutional requirements for the passage of a law by the initiative process are fixed by art. 48 of the Amendments to the Constitution of the Commonwealth, The Initiative, II, §§ 3, 4; V, § 1; General Provisions, III. These requirements are stated in outline in *Compton* v. *State Ballot Law Commission*, 311 Mass. 643, 645-646. The only question with respect to compliance with these constitutional requirements involved in the present case is whether the initiative petition had been signed by the required number

of qualified voters — "not less than twenty thousand" — when it was filed with the Secretary of the Commonwealth and by him transmitted to the clerk of the House of Representatives so that the proposed law was then "deemed to be introduced and pending." The Initiative, II, §§ 3, 4; V, § 1. No contention is made that if the initiative petition was so signed by the required number of voters the proposed law should not be submitted to the people at the State election, nor, on the other hand, is it contended that if the initiative petition was not so signed the proposed law should be submitted to the people.

The present proceeding is a petition for a writ of certiorari (G. L. [Ter. Ed.] c. 249, § 4) brought in the Supreme Judicial Court by ten citizens and registered voters of the Commonwealth — constituting the first ten signers of the petition — against the commissioners constituting the State ballot law commission — hereinafter referred to as the commission — for the purpose of quashing the proceedings before the commission in which it decided that it "rejects the petition, and the same shall not appear on the official ballot." See G. L. (Ter. Ed.) c. 53, § 22A, as appearing in St. 1938, c. 192.[1] The commissioners filed a return to the petition embodying therein the original decision of the commission and also a "supplementary statement" of the commission. And the Attorney General in behalf of the commissioners filed a demurrer to the petition in which the reason for demurrer stated was "that the petition and return do not set forth any cause or matter whatsoever entitling the petitioners to relief by way of a writ of certiorari against the respondents." The case was heard by a single justice of this court. As appears from the bill of exceptions, he "sustained the demurrer and ruled as a matter of law that the petition be dismissed," and the petitioners "duly excepted to the ruling sustaining the demurrer and to the ruling as a matter of law that the petition should be dismissed."

First. Procedure. No contention is made that a peti-

---

[1] Hereinafter, where § 22A is referred to, that section as appearing in St. 1938, c. 192, is intended.

tion for a writ of certiorari is not an appropriate proceeding to review the action of the commission, or that the petitioners are not proper parties to institute the proceeding. See *Locke* v. *Selectmen of Lexington*, 122 Mass. 290; *Horton* v. *Attorney General*, 269 Mass. 503, 508–509; *Compton* v. *State Ballot Law Commission*, 311 Mass. 643.

The case was heard by the single justice, in accordance with the usual practice, upon the petition and the return of the commissioners thereto (*Farmington River Water Power Co.* v. *County Commissioners*, 112 Mass. 206, 214; *Tewksbury* v. *County Commissioners of Middlesex*, 117 Mass. 563, 564; *Worcester & Nashua Railroad* v. *Railroad Commissioners*, 118 Mass. 561, 563–564; *Haven* v. *County Commissioners of Essex*, 155 Mass. 467, 468; *Warren* v. *Street Commissioners of Boston*, 183 Mass. 119, 120; *Webster* v. *Alcoholic Beverages Control Commission*, 295 Mass. 572, 573), except that, as has been said to be permissible practice (*Selectmen of Wakefield* v. *Judge of the First District Court of Eastern Middlesex*, 262 Mass. 477, 481; *Webster* v. *Alcoholic Beverages Control Commission*, 295 Mass. 572, 573; see also *Worcester & Nashua Railroad* v. *Railroad Commissioners*, 118 Mass. 561, 564; *Irwin* v. *Municipal Court of the Brighton District*, 298 Mass. 158, 159), a demurrer of the commissioners was filed with the return. We do not discuss the function, in general, of a demurrer in a certiorari proceeding, but since the ground of this demurrer is "that the petition and return do not set forth any cause or matter whatsoever entitling the petitioners to relief," such demurrer raised no question of law not presented for decision by the petition and the return thereto.

The "accurate statement of the force and effect of the return of respondents in a petition for a writ of certiorari is that it is 'conclusive as to all matters of fact, within their jurisdiction, passed upon by them.' *Tewksbury* v. *County Commissioners*, 117 Mass. 563, 565." *Marcus* v. *Street Commissioners of Boston*, 252 Mass. 331, 333. See also *Compton* v. *State Ballot Law Commission*, 311 Mass. 643, 646. This statement, however, necessarily implies that "a petitioner may attack the jurisdiction of the in-

ferior tribunal and may, if necessary, introduce evidence in support of his contention." *Marcus* v. *Street Commissioners of Boston*, 252 Mass. 331, 333. The petitioners in the present case attack the jurisdiction of the commission to make the decision challenged by them, but the burden rested upon them "to prove by evidence outside the record, if necessary, that the respondents were without jurisdiction." *Morrison* v. *Selectmen of Weymouth*, 279 Mass. 486, 490. The bill of exceptions, however, does not disclose that any such evidence was introduced at the hearing before the single justice. Evidence outside the record of a proceeding under review may also be received in the trial court to controvert statements of extrinsic facts in the return relied on to show that substantial justice does not require the granting of relief. *Tewksbury* v. *County Commissioners of Middlesex*, 117 Mass. 563, 566. *Byfield* v. *Newton*, 247 Mass. 46, 53–54. *Selectmen of Wakefield* v. *Judge of the First District Court of Eastern Middlesex*, 262 Mass. 477, 481. But the return in the present case contains no such statement, and the record does not disclose that any such evidence was introduced at the hearing before the single justice. (Moreover, such evidence, if introduced, would relate to a matter of discretion. *Ward* v. *Aldermen of Newton*, 181 Mass. 432, 433.) So far, therefore, as appears from the bill of exceptions, there was no evidence in the case that in any respect tended to controvert the facts stated in the return of the commissioners.

The petitioners, however, rely upon certain allegations of fact in their petition on the theory that, so far as these allegations are not inconsistent with the return of the commissioners, they are admitted by the commissioners by their demurrer, if not otherwise. There were no allegations of fact in the petition bearing upon the jurisdiction of the commission unless this effect is to be attributed to the allegation therein that the objections to the initiative petition filed with the Secretary of the Commonwealth and by him referred to the commission were "on the grounds that the signatures appearing thereon were invalid under the provisions of Article 48 of the amendments to the Con-

stitution and of Sections 7, 22A and 22B of Chapter 53, G. L. (Ter. Ed.)." Even if it is assumed in favor of the petitioners, in any aspect of the case, that this allegation, though not proved by evidence, is to be regarded as true and that any of the grounds of the objection therein stated are beyond the scope of the jurisdiction of the commission — matters upon which no opinion is here intimated — the inclusion of such grounds in the objections is not fatal to the jurisdiction of the commission upon grounds stated in such objections and acted upon by the commission that are within the scope of such jurisdiction. The other allegations of the petition relied on by the petitioners relate to the proceeding before the commission and are allegations with respect to the state of the evidence before the commission at the public hearings upon the objections to the initiative petition, to rulings of law alleged to have been made by the commission at such public hearings, and to requests by the petitioners that certain specific findings be incorporated in the record of the commission. Upon a hearing upon the petition and the return such allegations must be disregarded. *Dunn* v. *Mayor of Taunton*, 200 Mass. 252, 260. *Prusik* v. *Board of Appeal of Boston*, 262 Mass. 451, 453. *Newcomb* v. *Aldermen of Holyoke*, 271 Mass. 565, 567. *Walsh* v. *District Court of Springfield*, 297 Mass. 472, 478. In the light of these decisions the statement by the court in *Weed* v. *Mayor & Aldermen of Boston*, 172 Mass. 28, seeming to furnish some support for the petitioners' contention — however correct it may have been with respect to the state of the pleadings and the particular facts alleged in the petition in that case — is not applicable to the present case heard upon the petition and the return. And the demurrer purporting to be based upon the petition and the return does not change the situation.

The remedy of the petitioners, if they deemed the return of the commissioners insufficient by reason of the omission of facts alleged in the petition, was to move for an amendment or extension of the return. *Tileston* v. *Street Commissioners of Boston*, 182 Mass. 325, 327. *Swan* v. *Justices of the Superior Court*, 222 Mass. 542, 546. *Newcomb* v. *Alder-*

*men of Holyoke,* 271 Mass. 565, 568. The record in the present case does not disclose that any such specific motion was made by the petitioners or passed upon by the single justice. There is, however, in the petition a prayer for the extension of the record. But even if, as we do not intimate, the disposition of the case by the single justice is to be considered as a denial of this prayer within the scope of the petitioners' exceptions, no error of law is shown. *Marinelli* v. *Board of Appeal of Boston,* 275 Mass. 169, 173–174. *Morrison* v. *Selectmen of Weymouth,* 279 Mass. 486, 488. The return cannot be amended or extended by allegations in the petition.

The question for decision upon the petitioners' exceptions is whether there is error of law, including "excesses of jurisdiction," apparent on the record of the proceeding of the commission as set forth in the return of the commissioners to the petition. See *Locke* v. *Selectmen of Lexington,* 122 Mass. 290; *Old Colony Railroad* v. *Fall River,* 147 Mass. 455, 462; *Ward* v. *Aldermen of Newton,* 181 Mass. 432, 433; *Marcus* v. *Street Commissioners of Boston,* 252 Mass. 331, 333–334; *Newcomb* v. *Aldermen of Holyoke,* 271 Mass. 565, 567, and cases cited.

Second. Merits. The jurisdiction, if any, of the commission to make the decision challenged by the petitioners rested upon G. L. (Ter. Ed.) c. 53, § 22A, which is as follows: "The provisions of law relative to the signing of nomination papers of candidates for state office, and to the identification and certification of names thereon and submission to the registrars therefor, shall apply, so far as apt, to the signing of initiative and referendum petitions and to the identification and certification of names thereon, and, except as otherwise provided, to the time of their submission to the registrars. Registrars shall receipt in writing for each initiative or referendum petition submitted to and received by them, and shall deliver such petitions only on receiving written receipts therefor. Objections that signatures appearing on an initiative or referendum petition have been forged or placed thereon by fraud and that in consequence thereof the petition has not been signed by

a sufficient number of qualified voters actually supporting such petition, as required by the constitution, may be filed with the state secretary not later than the sixtieth day prior to the election at which the measure therein proposed or the law which is the subject of the petition is to be submitted to the voters, except that, if a referendum petition is lawfully filed after the sixty-third day prior to said election, such objections may be filed not later than seventy-two week day hours succeeding five o'clock of the day on which such petition is so filed. If upon hearing or otherwise it appears to the state secretary that there is substantial evidence supporting such objections, he shall refer the same to the state ballot law commission, which shall investigate the same, and for such purpose may exercise all the powers conferred upon it relative to objections to nominations for state offices, and if it shall appear to said commission that the objections have been sustained it shall forthwith reject the petition as not in conformity with the constitution and shall notify the state secretary of its action." A related statute, inserted in G. L. (Ter. Ed.) c. 53 as § 22B by St. 1938, c. 191, provides that "Each initiative or referendum petition filed with the state secretary shall contain a statement, signed under the penalties of perjury by the person who circulated the petition, that each person whose name appears on said petition signed the same in person."

Significant parts of the return of the commissioners to the petition are the following: "There were transmitted to the respondents under the provisions of G. L. (Ter. Ed.) c. 53, § 22A, by the Secretary of the Commonwealth, objections filed with him to the proposed measure, the same being an initiative petition, under the provisions of Art. XLVIII of the Amendments to the Constitution as set forth in the petition for the writ of certiorari. . . . The initiative petition purported to be signed by 24,192 persons. The Commission found upon the evidence introduced at the hearings that of that number more than 5,000 signatures of purported signers were forged or placed on the petition by fraud. That this left less than 20,000 signers on the peti-

tion, the amount necessary to cause the same to go on the ballot under the provisions of Art. XLVIII of the Amendments." The original decision filed by the commission, set out in the return, contained the following: "Objections that signatures appearing on said petition were forged or placed thereon by fraud having been sustained, the Commission finds that in consequence thereof the petition has not been signed by a sufficient number of qualified voters actually supporting such petition as required by the Constitution. The Commission, therefore rejects the petition, and the same shall not appear on the official ballot." And the supplementary statement, also set out in the return, contained the following: "While the Commission would have rejected the petition on its findings as to the violations of chapter 53, section 22B, it also found a more serious situation, namely, that the petition contained more than 5,000 invalid signatures of purported signers. The Commission found that these invalid signatures were forged or were placed on the petition by fraud. The petition was, therefore, rejected." Further statements in the return are referred to hereafter in this opinion.

The petitioners contend (a) that the portion of G. L. (Ter. Ed.) c. 53, § 22A, under which the commission purported to act, particularly the portion thereof with respect to fraud, is unconstitutional on its face; (b) that even if this portion of the section is not unconstitutional on its face, the action of the commission thereunder in the present case was unconstitutional; and (c) that even if the portion of the section under which the commission purported to act is constitutional on its face and the commission acted in a constitutional manner in the present case, "its conclusion that the petition should be rejected because of the presence thereon of signatures which had been placed thereon by fraud was erroneous, and its order rejecting the petition on that ground is null and void."

A. The contention of the petitioners that the portion of said § 22A of G. L. (Ter. Ed.) c. 53 under which the commission purported to act is unconstitutional on its face is based on three distinct grounds: (a) that the requirements

of due process are not satisfied by the section because it does not provide as matter of right for notice and an opportunity to be heard; (b) that these requirements are not satisfied because there is no provision as matter of right for appeal or judicial review of the action of the commission; and (c) that the portion of said § 22A under which the commission purported to act with respect to fraud is unconstitutional because beyond the power granted to the Legislature by art. 48 of the Amendments to the Constitution.

The statute in question was before this court in the recent case of *Compton* v. *State Ballot Law Commission,* 311 Mass. 643, but its constitutionality was not therein attacked nor considered by the court. In dealing with the question of the constitutionality of this statute, the long established principle is to be applied that "All rational presumptions are made in favor of the validity of every act of the legislative department of government, and the court will not refuse to enforce it unless its conflict with the Constitution is established beyond reasonable doubt." *Perkins* v. *Westwood,* 226 Mass. 268, 271, and cases cited. *Lowell Co-operative Bank* v. *Co-operative Central Bank,* 287 Mass. 338, 343–344. *Moore* v. *Election Commissioners of Cambridge,* 309 Mass. 303, 311–312.

1. General Laws (Ter. Ed.) c. 53, § 22A, does not in express terms require notice of objections to an initiative petition referred to the commission and opportunity to be heard thereon before the commission. The decision of the commission, however, cannot be struck down on this ground.

The reason for holding statutes unconstitutional for failure to provide therein for notice and opportunity to be heard is that by proceedings thereunder persons are "deprived of life, liberty or property" in contravention of the Constitution of the Commonwealth and the Fourteenth Amendment to the Constitution of the United States. *Pizer* v. *Hunt,* 253 Mass. 321, 332. *Reale* v. *Judges of the Superior Court,* 265 Mass. 135, 141. The rights protected by the constitutional guaranties are private rights. This was true in the cases relied on by the petitioners on this branch of the case.

See *Fisher* v. *McGirr*, 1 Gray, 1, 39-40; *Pizer* v. *Hunt*, 253 Mass. 321, 332; *Coe* v. *Armour Fertilizer Works*, 237 U. S. 413, 424-425, and cases cited.

The ultimate question for decision by the commission according to the terms of G. L. (Ter. Ed.) c. 53, § 22A, however, relates to a public right and not to private rights. This question is whether, for the reasons set forth in the section, the "petition has not been signed by a sufficient number of qualified voters actually supporting such petition, as required by the constitution," so that the petition should be rejected as not in conformity with the Constitution and, consequently, the law proposed thereby should not be submitted to the people at the State election. This is a matter in which all qualified voters of the Commonwealth, whether or not they signed the initiative petition, have an interest as a part of the public but no private right or interest. This conclusion is in accord with the language and decision in *Brooks* v. *Secretary of the Commonwealth*, 257 Mass. 91. In that case citizens and voters of the Commonwealth brought a petition for a writ of mandamus to compel the Secretary of the Commonwealth to omit from the ballot for the next State election a law proposed under the initiative procedure. The court held that the "petitioners as citizens and voters have standing to maintain this petition." Page 92. The court quoted from the opinion in *Brewster* v. *Sherman*, 195 Mass. 222, 224, the following statement of the general rule: "When the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the people are regarded as the real party in interest, and the relator at whose instigation the proceedings are instituted need not show that he has any legal or special interest in the result, it being sufficient to show that he is a citizen and as such interested in the execution of the laws." The court also quoted from the opinion in the *Brewster* case the statement in *Attorney General* v. *Boston*, 123 Mass. 460, 479, that "There is a great weight of American authority in favor of the doctrine that any private person may move, without the intervention of the attorney general, for a writ

of mandamus to enforce a public duty not due to the government as such." Page 93. Numerous cases were cited in which this general rule had been affirmed and applied. The court in *Brooks* v. *Secretary of the Commonwealth* concluded its discussion of this branch of the case by saying: "The case at bar falls within the rule of *Brewster* v. *Sherman* . . . . The present petitioners seek the enforcement of public duty by an officer with respect to a public right in which the voters at large have an interest." Page 94. The principle declared in the *Brooks* case with respect to persons instituting proceedings relating to initiative and referendum petitions has been followed in practice in later cases, irrespective of whether the petitioners were signers of the initiative petition. See *Horton* v. *Attorney General,* 269 Mass. 503; *Yont* v. *Secretary of the Commonwealth,* 275 Mass. 365; *Christian* v. *Secretary of the Commonwealth,* 283 Mass. 98; *Mount Washington* v. *Cook,* 288 Mass. 67; *Evans* v. *Secretary of the Commonwealth,* 306 Mass. 296; *Compton* v. *State Ballot Law Commission,* 311 Mass. 643. See also *Prescott* v. *Secretary of the Commonwealth,* 299 Mass. 191; *Cronin* v. *Secretary of the Commonwealth,* 299 Mass. 205. Compare *McGlue* v. *County Commissioners of Essex,* 225 Mass. 59. And the right of the petitioners to bring the present petition rests upon this principle unless — a matter herein later referred to — it can be rested upon the ground of "substantial injury or manifest injustice" to the petitioners in their private rights. See *Walsh* v. *District Court of Springfield,* 297 Mass. 472, 474.

The initiative process for the passage of a law is in many respects analogous to the election process for the election of State officers. By express provisions of art. 48 the proposed law is to be placed upon the ballot for the State election in a particular manner. The Initiative, V, § 1; General Provisions, III. See *Opinion of the Justices,* 294 Mass. 610; 309 Mass. 631. Thereafter the usual proceedings of the election process are followed. The method by which the initiative process originates, though prescribed in considerable detail by constitutional provisions (The Initiative, II, § 3), is somewhat analogous to the method of nominating

candidates for State offices, and the analogy was recognized in the constitutional provisions for identification and certification of signatures. General Provisions, I. Although the Constitution fixes the qualifications of voters (art. 3, as amended, and art. 30 of the Amendments), "the right to vote is a sacred privilege" and every "rational intendment is to be made in favor of its rightful exercise," yet "the Legislature is clothed with power to enact appropriate laws to regulate the orderly conduct of elections and to facilitate the counting of votes." *O'Brien* v. *Election Commissioners of Boston*, 257 Mass. 332, 338. See also *Capen* v. *Foster*, 12 Pick. 485, 493; *Miner* v. *Olin*, 159 Mass. 487; *Cole* v. *Tucker*, 164 Mass. 486, 487–489; *Commonwealth* v. *Rogers*, 181 Mass. 184, 186–187; *Opinion of the Justices*, 247 Mass. 583, 586–588; *Moore* v. *Election Commissioners of Cambridge*, 309 Mass. 303, 324. To what extent the Legislature has power under the general grant of legislative power to legislate with respect to the initiative process need not be considered, for art. 48, though providing that it is "self-executing," provides further that "legislation not inconsistent with anything herein contained may be enacted to facilitate the operation of its provisions." General Provisions, VII. This is a recognition or grant of a legislative power similar in nature, when not inconsistent with art. 48, to the legislative power with respect to elections described in *O'Brien* v. *Election Commissioners of Boston*, 257 Mass. 332, 338.

Article 48 and statutes passed under the authority thereof impose the duty of enforcing the provisions of said article — subject to review by the courts in appropriate proceedings — upon administrative officers, particularly upon the Secretary of the Commonwealth and the State ballot law commission. The duty of enforcing the provisions of art. 48 is a "public duty . . . with respect to a public right in which the voters at large have an interest." *Brooks* v. *Secretary of the Commonwealth*, 257 Mass. 91, 94. In performing this duty the respective administrative officers, acting within the scope of the authority conferred upon them, represent the public at large including all qualified voters.

See *Commonwealth* v. *Commissioner of Banks in re Prudential Trust Co.* 240 Mass. 244, 252. With respect to a somewhat similar situation it was said in *Bi-Metallic Investment Co.* v. *Board of Equalization of Colorado*, 239 U. S. 441, 445, that where "a rule of conduct applies to more than a few people it is impracticable that every one should have a direct voice in its adoption." The court was there considering an order of certain State boards increasing the valuation of all taxable property in one of the cities of the State, and it was assumed that the proper State machinery had been used. The court stated the question to be "whether all individuals have a constitutional right to be heard before a matter can be decided in which all are equally concerned," and answered this question as applied to the particular case in the negative.

The duty of the Secretary is primarily, though not exclusively, of a ministerial nature to be performed upon the basis of documents filed with him. See G. L. (Ter. Ed.) c. 53, § 22A; *Compton* v. *State Ballot Law Commission*, 311 Mass. 643, 659. Compare *Hitchcock* v. *Examiners for Hampshire County*, 301 Mass. 170, 172–173. The duty of the State ballot law commission, however, is not purely ministerial. Its duty is to "investigate" objections to signatures appearing on an initiative petition in certain respects for the purpose of determining the ultimate question whether the petition fails to bear a sufficient number of signatures of qualified voters, as required by the Constitution, for the law proposed thereby to be submitted to the people. The performance of this duty may and ordinarily does require the determination of facts apart from documents filed with or referred to the commission. In the performance of this duty the commission, under the authority conferred by G. L. (Ter. Ed.) c. 53, § 22A, "may exercise all the powers conferred upon it relative to objections to nominations for state offices," and, under its general powers, "may summon witnesses, administer oaths, and require the production of books and papers at a hearing before it upon any matter within its jurisdiction." G. L. (Ter. Ed.) c. 6, § 32 (see St. 1937, c. 227; St. 1938, c. 473, § 1). The duty of the

commission in some aspects at least may be described as quasi judicial since it involves a determination of facts. But while doubtless it was contemplated by G. L. (Ter. Ed.) c. 53, § 22A, that the investigation by the commission thereby authorized might be made through the medium of a hearing, though a hearing is not required in express terms, it is unnecessary for the purposes of this case to determine whether the scope of the statutory investigation is so limited.

Neither the nature of the issue to be decided by the commission nor the fact that the decision of this issue involves a determination of facts imports that a person having no private right or interest beyond that of the public at large or qualified voters of the Commonwealth generally has a constitutional right to notice and opportunity to be heard in the proceeding before the commission. Such notice to, and opportunity to be heard for, all the qualified voters of the Commonwealth obviously would be impracticable. *Bi-Metallic Investment Co.* v. *Board of Equalization of Colorado,* 239 U. S. 441, 445. A requirement of such notice and opportunity to be heard would not "facilitate the operation" of the provisions of art. 48. General Provisions, VII. On the contrary, it would tend to hamper such operation. And there is no such constitutional requirement — as in proceedings where private rights are involved — for the protection of the public right involved in the proceeding before the commission. What was said in *National Licorice Co.* v. *National Labor Relations Board,* 309 U. S. 350, 363, though with respect to a materially different proceeding, applies to a proceeding before the commission such as is here in question: "In a proceeding so narrowly restricted to the protection and enforcement of public rights, there is little scope or need for the traditional rules governing the joinder of parties in litigation determining private rights." This principle is in conformity with the principle of general application that — apart from express statutory provisions (see *Barrows* v. *Farnum's Stage Lines, Inc.* 254 Mass. 240, 243) — persons are not entitled "to litigate matters in which they have no interest affecting their liberty,

rights or property." *Hogarth-Swann* v. *Weed*, 274 Mass. 125, 132–133, and cases cited. And this is true even where the constitutionality of a statute is involved. "Only those directly affected as to some personal interest by the operation of a statute can question its validity." *Horton* v. *Attorney General*, 269 Mass. 503, 514. See also *McGlue* v. *County Commissioners of Essex*, 225 Mass. 59, 60, and cases cited; *Mullholland* v. *State Racing Commission*, 295 Mass. 286, 290–291. We think it clear that G. L. (Ter. Ed.) c. 53, § 22A, is not unconstitutional by reason of the failure to provide therein for notice to all qualified voters of the Commonwealth of proceedings before the commission with an opportunity for them to be heard before the commission.

Very likely the petitioners' contention does not go to the extent that all qualified voters of the Commonwealth have a constitutional right to notice and opportunity to be heard. But the extent of their contention is not wholly clear. It may be their contention that the petitioners in the present case have such a constitutional right or that all the signers of the initiative petition have such a constitutional right. The present petitioners, however, have no such constitutional right beyond that of other signers of the petition. It appears to be uncontroverted not only that the petitioners in the present case are citizens and voters of the Commonwealth, but also that they were "the first ten signers" of the initiative petition. Such signers perform a special function with respect to originating the initiative petition and have special powers with respect to amending the law proposed thereby. The Initiative, II, § 3; V, § 2. But in other particulars they are in no different position from that of other signers of the initiative petition. The petition signed by "the first ten signers" is the same petition as that signed by other qualified voters. *Mount Washington* v. *Cook*, 288 Mass. 67, 70. The "first ten signers" have no private right or interest beyond that of other signers of the petition.

There is the same objection on the ground of impracticability — though less in degree — to requiring notice of the proceeding before the commission to all signers of the

initiative petition as to requiring such notice to all qualified voters. As is more fundamental, however, the signers of the initiative petition do not by signing it acquire any private right to have the law proposed by such petition submitted to the people distinct from the public right that the law with respect to such submission be enforced. Although such signers are advocates of the proposed law, their interest in the enforcement of the law with respect to such submission, though from a different point of view, is of the same nature as the interest of all other qualified voters, even including those who are indifferent or opposed to the proposed law. Qualified voters who are opposed thereto have the same standing to bring appropriate proceedings for the enforcement of the laws with respect to the submission of the proposed law to the people as have qualified voters advocating the proposed law or signing the initiative petition by which it is proposed. See *Brooks* v. *Secretary of the Commonwealth,* 257 Mass. 91; *Christian* v. *Secretary of the Commonwealth,* 283 Mass. 98; *Compton* v. *State Ballot Law Commission,* 311 Mass. 643. In each instance such standing is based upon the right of a citizen to bring a proceeding "with respect to a public right in which the voters at large have an interest." *Brooks* v. *Secretary of the Commonwealth,* 257 Mass. 91, 94. In neither instance is the standing to bring the proceeding based upon a private right constitutionally protected. A signer of an initiative petition has not a standing such as that of a candidate for election who has a special interest in the result of the election process (see *O'Brien* v. *Election Commissioners of Boston,* 257 Mass. 332), though we need not consider to what extent his interest in proceedings under the election process is within the protection of constitutional provisions. See *Ashley* v. *Three Justices of the Superior Court,* 228 Mass. 63, 72, 73. The position of a signer of an initiative petition is more nearly analogous to that of a voter signing a nomination paper for an election or voting at an election. His constitutional right is to exercise his privilege as a voter in accordance with reasonable regulations with respect to casting his vote and having it counted. But a voter, as such, has no

private right in the result of an election beyond the right of all other voters entitled to vote at such election. Compare *Sevigny* v. *Russell*, 260 Mass. 294. Where proceedings can be brought by voters to determine the result of an election it is by virtue of statutory authority and not by reason of any private right in such voter distinct from the public right. See G. L. (Ter. Ed.) c. 55, § 37; *Ashley* v. *Three Justices of the Superior Court*, 228 Mass. 63. We conclude, therefore, that signers of an initiative petition, as such, have no private right in the questions to be determined by the commission under G. L. (Ter. Ed.) c. 53, § 22A, and, consequently, that the failure of the section to provide for notice to such signers of the proceeding before the commission, and an opportunity for them to be heard before the commission on such questions, does not render the section unconstitutional.

No question is raised on the record of this case of the impairment of the private rights of those signers of the initiative petition whose signatures were found by the commission to have been "forged or placed thereon by fraud," as distinguished from the rights of the signers of the initiative petition generally. The record does not disclose that any of the petitioners was within this class of signers, and the petitioners have no standing to raise the question that G. L. (Ter. Ed.) c. 53, § 22A, is unconstitutional on the ground that it impairs the private rights of signers who are within this class. To any such special grievance of other signers of the petition the petitioners are strangers. *Horton* v. *Attorney General*, 269 Mass. 503, 513–514.

In view of the conclusion here reached with respect to notice and opportunity to be heard it is unnecessary to consider other contentions relating to the subject in support of the constitutionality of G. L. (Ter. Ed.) c. 53, § 22A, or of the constitutionality of the action of the commission here involved.

2. The contention of the petitioners that the portion of § 22A of G. L. (Ter. Ed.) c. 53 under which the commission purported to act is unconstitutional on the ground that the constitutional requirements of due process are not satisfied

by the section, because there is no provision as matter of right for appeal or judicial review of action of the commission, fails on the same ground as that already discussed with respect to the lack in the section of a requirement for notice and opportunity to be heard — that the proceeding before the commission, so far as any question with respect thereto is involved in the present case, relates to a public right and not to private rights. Nevertheless, as already pointed out, a remedy appropriate for the enforcement of a public right is available.

3. The third contention of the petitioners to the effect that G. L. (Ter. Ed.) c. 53, § 22A, is unconstitutional relates solely to the portion thereof under which the commission purported to act with respect to fraud. This portion of the section purports to confer upon the commission the power to determine whether signatures appearing on an initiative petition were "placed thereon by fraud." The petitioners urge that this portion of the section is beyond the scope of the power granted to the Legislature by art. 48. This contention cannot be sustained.

Article 48 provides specifically that provision "shall be made by law for the proper identification and certification of signatures" to initiative and referendum petitions, as well as "for penalties for signing any such petition, or refusing to sign it, for money or other valuable consideration, and for the forgery of signatures thereto." The article provides further that the "general court may provide by law that no co-partnership or corporation shall undertake for hire or reward to circulate petitions, may require individuals who circulate petitions for hire or reward to be licensed, and may make other reasonable regulations to prevent abuses arising from the circulation of petitions for hire or reward." General Provisions, I. But art. 48 also provides that, though it "is self-executing," "legislation not inconsistent with anything herein contained may be enacted to facilitate the operation of its provisions." General Provisions, VII.

Clearly the phrase "proper identification and certification of signatures" in art. 48, General Provisions, I, includes a determination whether the names signed to a petition are

the names of qualified voters of the Commonwealth — a subject considered in *Compton* v. *State Ballot Law Commission*, 311 Mass. 643 — and a determination whether the signatures to a petition are, in fact, the signatures of the persons whose signatures they purport to be.

We do not pause to consider whether the phrase "proper identification and certification of signatures" includes also a determination whether signatures upon an initiative petition have been "placed thereon by fraud" — although we intimate no opinion to the contrary (*Compton* v. *State Ballot Law Commission*, 311 Mass. 643, 656) — for we are of opinion that legislation directed to a determination of this fact is legislation "to facilitate the operation" of the provisions of art. 48. General Provisions, VII. Reasonable legislation "to regulate the orderly conduct of elections and to facilitate the counting of votes" is within the general grant of legislative power. *O'Brien* v. *Election Commissioners of Boston*, 257 Mass. 332, 338. So also is reasonable legislation to insure the purity of elections. *Ashley* v. *Three Justices of the Superior Court*, 228 Mass. 63. In the latter case it was said: "The purity and freedom of elections is fundamental in a republican form of government. Scarcely anything can be conceived of more vital to the public welfare than free and honest elections." Page 74. Obviously there is like necessity for purity in the initiative process. Article 48, I, defines the "popular initiative" as "the power of a specified number of voters to submit constitutional amendments and laws to the people for approval or rejection." Legislation reasonably calculated to insure that the submission of such constitutional amendments and laws to the people shall not be accomplished by means of signatures, "placed" upon an initiative petition "by fraud," that do not represent the intention of qualified voters entitled to sign such a petition expressed in a legal manner, is legislation "to facilitate the operation" of the provisions of art. 48 within the natural meaning of those words. (By what is here said we do not attempt to define the scope of the words "placed thereon by fraud" in G. L. [Ter. Ed.] c. 53, § 22A. See *Compton* v. *State Ballot Law Commission*,

311 Mass. 643, 656.)  We cannot accede to the apparent suggestion of the petitioners that only legislation that makes easy the submission of a proposed law to the people facilitates the operation of the provisions of art. 48.  The operation of those provisions includes also the nonsubmission of a proposed law to the people if the constitutional requirements for such submission are not met.  Legislation directed to this end is legislation "to facilitate the operation" of the provisions of art. 48.

Moreover, if legislation is calculated to "facilitate the operation" of the provisions of art. 48, such legislation is precluded only if it is "inconsistent with anything" contained in said article.  The provision in G. L. (Ter. Ed.) c. 53, § 22A, with respect to signatures "placed" upon an initiative petition "by fraud" is not "inconsistent with anything" contained in art. 48.  The fact that certain subjects with respect to initiative petitions are dealt with specifically in art. 48, General Provisions, I, does not imply that related subjects may not be dealt with under the authority to legislate "to facilitate the operation" of the provisions of art. 48 so long as there is no actual inconsistency between such legislation and the provisions of art. 48.

B.  The contention of the petitioners, that even if the portion of G. L. (Ter. Ed.) c. 53, § 22A, under which the commission purported to act is not unconstitutional on its face — as we hold — the action of the commission thereunder in the present case was unconstitutional, cannot be sustained.

This contention that the action of the commission was unconstitutional rests upon the ground — of like nature to the ground already considered in connection with the contention that the portion of G. L. (Ter. Ed.) c. 53, § 22A, under which the commission purported to act was unconstitutional on its face — that the action of the commission amounted to a denial of due process of law.  But the decisive answer to this contention, like the answer to the similar contention with respect to the unconstitutionality of G. L. (Ter. Ed.) c. 53, § 22A, on its face, is that the ultimate question for decision by the commission in the

proceeding before it — whether the proposed law should be submitted to the people — related to a public right and not to private rights, and that the constitutional requirements of due process of law are for the protection of private rights and are inapplicable to proceedings involving public rights, so long as such proceedings do not affect private rights. The record does not disclose that any private rights of the petitioners distinct from the interest of all qualified voters, or at least from the interest of all signers of the initiative petition, were involved in the proceeding before the commission or affected by its decision.

The petitioners make no contention that they had no actual notice of the proceeding before the commission or opportunity to be heard at such proceeding. Such a contention would be foreclosed by the statement in the return, not controverted by facts appearing in the record of the present case, that the commission, having received from the Secretary of the Commonwealth objections filed with him, "proceeded to conduct an investigation respecting said objections and held public hearings at which the petitioners for said measure and the objectors thereto appeared and were represented by counsel, who were heard and introduced evidence." The particular objections of the petitioners to the proceeding before the commission are that the findings of the commission were not based solely upon evidence before the commission and that the commission made no findings of fact upon which its ultimate conclusions of fact and law are based.

Even if it be assumed — as we do not decide — that for any legal reason the commission was required to base its findings solely on evidence before it, the return of the commissioners — which must be taken as true — shows that the findings upon which rested the ultimate conclusion of the commission were based solely upon evidence. The return states that the initiative petition "purported to be signed by 24,192 persons" and that the commission found "upon the evidence introduced at the hearings that of that number more than 5,000 signatures of purported signers were forged or placed on the petition by fraud," with the

result that there was an insufficient number of signers upon the initiative petition. There are other statements in the return with respect to the proceeding before the commission. The return of the commissioners in the part thereof described as "supplementary statement" refers to the initiative petition in such a manner as to indicate that it was before the commission, and refers to the appearance of some of the witnesses, their manner of testifying and their apparent lack of credibility, and to improper occurrences at the hearing before the commission, and states that with "this unhealthy background the Commission had to pass on the validity of the petition from evidence presented at the hearing and from facts that the Commission uncovered itself during its own investigation."

This statement in the return with respect to the "unhealthy background" does not vitiate the findings of the commission upon the decisive issue of the case. The reference to the "facts that the Commission uncovered itself during its own investigation" is somewhat ambiguous, but it does not necessarily import that the commission considered anything that was not before it in the nature of evidence proper for its consideration, even if — as we do not intimate — it was required to base its findings solely upon evidence. Obviously the commission, within such a limitation, could consider the initiative petition though it was not "presented at the hearing" by the parties appearing before the commission. It does not appear that this petition was not exhibited to or made available to these parties. The situation shown by the return differs materially from that in *American Employers' Ins. Co.* v. *Commissioner of Insurance,* 298 Mass. 161, 166–168, and in *Boott Mills* v. *Board of Conciliation & Arbitration,* 311 Mass. 223, 226–227. The reference to the commission's "own investigation" cannot override the express statement in the return that the finding of the commission as to the number of signatures forged or placed on the petition by fraud was made upon the evidence introduced at the hearing.

The original decision of the commission followed closely

the language of G. L. (Ter. Ed.) c. 53, § 22A, imposing upon the commission the duty to "investigate" objections "that signatures appearing on an initiative . . . petition have been forged or placed thereon by fraud and that in consequence thereof the petition has not been signed by a sufficient number of qualified voters actually supporting such petition, as required by the constitution," and "if it shall appear to said commission that the objections have been sustained . . . forthwith [to] reject the petition as not in conformity with the constitution." The original decision of the commission set forth in the return states: "Objections that signatures appearing on said petition were forged or placed thereon by fraud having been sustained, the Commission finds that in consequence thereof the petition has not been signed by a sufficient number of qualified voters actually supporting such petition as required by the Constitution" and "therefore rejects the petition."

The return of the commissioners, however, contains the further statements that the petition "purported to be signed by 24,192 persons" and that the commission found "that of that number more than 5,000 signatures of purported signers were forged or placed on the petition by fraud," thus leaving fewer signatures on the petition than were necessary to cause the proposed law to go on the ballot. The return states also that the commission "received a request for findings of material facts from counsel representing the original signers of the initiative petition as set forth in the petition for the writ of certiorari . . . [thus incorporating in the return this part of the petition], but took no action thereon and made no findings of fact except such as are embodied in their decisions" set forth in the return. This request apparently was made after the original decision of the commission was filed with the Secretary of the Commonwealth. The finding of the commission with respect to the number of purported signatures "forged or placed on the petition by fraud" was sufficient in law to support its ultimate conclusion. This finding was a unit. There is no statutory or other legal requirement — compliance with which was essential to the validity of the de-

cision of the commission — that, even upon the request of a party at the proceeding before the commission or thereafter, this finding with respect to the number of signatures forged or placed upon the petition by fraud be further analyzed.   See *Tileston* v. *Street Commissioners of Boston,* 182 Mass. 325, 327.   The return states further that "During these hearings the respondents made no rulings of law." Express rulings were not essential to the validity of the decision.

A return to a petition for a writ of certiorari brought for the purpose of reviewing a decision on the ground of error of law therein should be sufficient to show the principles of law upon which the decision was based.   See *Bradley* v. *Zoning Adjustment Board of Boston,* 255 Mass. 160, 163. But if a return is not deemed sufficient to show these principles, the remedy of the petitioner, as already pointed out, is to obtain an amendment or extension of the return.   The return of the commissioners originally filed in the present case has not been amended or extended, and, as already pointed out, no error of law in this respect is disclosed.

C.   Apart from objections by the petitioners on constitutional grounds to G. L. (Ter. Ed.) c. 53, § 22A, and the action of the commission thereunder, the petitioners contend that the conclusion of the commission that the petition should be rejected because of the presence thereon of signatures that had been placed thereon by fraud was erroneous and that its order rejecting the petition is null and void.

This contention is based upon an allegation in the petition that at the public hearings before the commission "no evidence was offered by the objectors or received by the . . . [commission] that the signature of any person who signed said initiative petition as a petitioner had been placed on said petition by fraud other than evidence tending to prove that the provisions of G. L. (Ter. Ed.) Chapter 53, Section 22B had not been complied with or that the circulators' certificates in certain instances contained false statements of fact in that not all of the signatures of petitioners to which such certificates applied were affixed in the presence of the circulator who signed the certificate."   There

is nothing in the return of the commissioners to support the allegation that no such evidence was offered or received, and, as already pointed out, this allegation must be disregarded.

General Laws (Ter. Ed.) c. 53, § 22B, provides that each "initiative . . . petition filed with the state secretary shall contain a statement, signed under the penalties of perjury by the person who circulated the petition, that each person whose name appears on said petition signed the same in person." The return of the commissioners in the part thereof described as "supplementary statement" contains various recitals of fact with respect to violations of this section, such as that some of the "circulators" of the initiative petition here involved knowingly made false and fraudulent statements and that "there was a large number of circulators whose names were forged to the statement" required by this section. The return states, however, that, while the commission "would have rejected the petition on its findings as to the violations of chapter 53, section 22B, it also found a more serious situation, namely, that the petition contained more than 5,000 invalid signatures of purported signers. The Commission found that these invalid signatures were forged or were placed on the petition by fraud." The return is not fairly open to the construction that in making this decisive finding the commission based it upon violations of § 22B. The return makes a marked distinction between the findings of the commission with respect to such violations and its findings with respect to signatures of voters "forged" or "placed on the petition by fraud." It is, therefore, unnecessary to consider whether it would have been within the jurisdiction of the commission under § 22A to reject an initiative petition by reason of violations of § 22B.

It follows from what has been said that no error of law or excess of jurisdiction on the part of the commission in deciding that the initiative petition here involved should be rejected is apparent upon the record of the proceeding of the commission as set forth in the return of the commissioners to the petition.

*Exceptions overruled.*