LAURENCE J. CURTIN & another *vs.* BOARD OF APPEALS OF QUINCY.

Norfolk. October 8, 1952. — November 3, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Board of Appeals. Words, "Determination."*

An "applicable board" appealed to under G. L. (Ter. Ed.) c. 43, § 9, as appearing in St. 1948, c. 459, § 5, "for a determination" of a question as to the validity or sufficiency of a petition for the adoption of a plan of government by a city or of the signatures thereon is not required to grant a hearing.

PETITION, filed in the Superior Court on September 17, 1951.

The petitioners appealed from an order by *Forte, J.*, sustaining a demurrer.

*Maurice F. Maher*, for the petitioners.

*Douglas A. Randall*, Assistant City Solicitor, for the respondent.

SPALDING, J. The material allegations of this petition for a writ of certiorari are as follows: The petitioners are qualified voters of the city of Quincy, hereinafter called the city. Since January 1, 1949, the city has been operating under the Plan E charter prescribed by G. L. (Ter. Ed.) c. 43, §§ 93–116, inserted by St. 1938, c. 378, § 15, as amended. On June 19, 1951, there was filed with the city clerk of the city a petition, of which the petitioners were signers, for the adoption of the Plan A charter provided by G. L. (Ter. Ed.) c. 43, §§ 46–55, as amended, and the peti-

tion was forwarded to the board of registrars.  The petition was purportedly signed by 5,956 qualified voters of the city. On August 15, 1951, the board of registrars returned the petition to the city clerk, certifying that 4,669 of the signatures contained thereon were those of registered voters of the city and that such number was at least 10% of the number of registered voters at the last State election.  On August 20, 1951, one Smith filed with the city council and the clerk of the board of registrars an appeal challenging the validity and sufficiency of the Plan A petition and the signatures appearing thereon.  Thereafter the appeal was referred to the respondents, who are the applicable board under G. L. (Ter. Ed.) c. 43, § 9, as appearing in St. 1948, c. 459, § 5, and c. 53, § 12, as appearing in St. 1937, c. 212, § 2, as amended by St. 1939, c. 166, and St. 1943, c. 334, § 7, and they proceeded to hold public hearings on the matters in issue.  On September 11, 1951, the respondents rendered a decision that 331 of the certified signatures on the petition were invalid and that by reason thereof the petition lacked the necessary number of signatures required by G. L. (Ter. Ed.) c. 43, § 7, as appearing in St. 1948, c. 459, § 3, and was rejected.

The eighth and ninth paragraphs, which contain the grounds on which the respondents' decision is challenged, are as follows: "8. At the said public hearings no evidence was offered by the objectors or received by the respondents which as a matter of law was sufficient to warrant the findings of the said respondents, that 331 signatures appearing on the petition were forgeries.  9. That after the said public hearing had closed, the respondents conducted an investigation wherein certain unsworn statements were received and considered without affording the petitioners opportunity to meet the claims made and to present evidence in contradiction to the statements considered by the respondents as evidence."  The petition asks that the decision of the respondents be quashed.

The respondents demurred on the grounds (1) that the petition does not show errors of law on the part of the re-

spondents, and (2) that certiorari will not lie for the reason that under G. L. (Ter. Ed.) c. 43, § 9, their decision was final. From an order sustaining the demurrer the petitioners appealed. G. L. (Ter. Ed.) c. 231, § 96. *Clement* v. *Selectmen of Westwood*, 316 Mass. 481. *Adamsky* v. *City Council of New Bedford*, 326 Mass. 706, 707.

The demurrer was rightly sustained on the first ground.

The grounds relied on to impeach the respondents' decision necessarily rest on the hypothesis that a hearing was required — a question left open in our recent decision of *Hannigan* v. *Board of Appeals of Lowell*, 328 Mass. 366, 370–371.

We are of opinion that no hearing was required. The governing statute, G. L. (Ter. Ed.) c. 43, § 9, provides that "If any question arises as to the validity or sufficiency of . . . [a petition of the sort here involved] or of the signatures thereon, any registered voter of the city may appeal *for a determination of said question* to the applicable board referred to in section twelve of chapter fifty-three" (emphasis supplied). We recognize that the fact that the statute uses the word "determination" without expressly providing for a hearing is not decisive of the question before us. In other contexts the word might be held to import a hearing. See, for example, *Anderson* v. *Alexander*, 191 Ore. 409, 441–442; *Tracy* v. *MacIntyre*, 29 Cal. App. (2d) 145. And it has been held that where power is given to remove "for cause" a removal is not authorized without notice and hearing, even though the statute does not so provide in terms. *Ham* v. *Boston Board of Police*, 142 Mass. 90, 95. *Bailen* v. *Assessors of Chelsea*, 241 Mass. 411, 414. *Murphy* v. *Casey*, 300 Mass. 232, 234. But an analysis of the pertinent statutes here convinces us that the Legislature intended that the "determination" by the applicable board was to be made in a summary manner. It is apparent that in the statutory scheme set up for the adoption by the voters of one of the plans provided by c. 43 the time factor is of the utmost importance. In § 7 it is provided that after the petition for the adoption of a plan is filed the city clerk

"shall forthwith transmit the same to the registrars of voters, who shall within sixty days certify the signatures thereon in accordance with the provisions of law and return the petition to the city clerk." Under § 9 the city clerk is required within seventy days after the petition has been filed to "transmit a certified copy thereof to the city council . . . ." There then follows the provision mentioned above giving to any registered voter the right to appeal to the applicable board for a determination of any question arising as to "the validity or sufficiency of the petition or of the signatures thereon" by filing a notice of appeal "within eighty days after the date the petition was filed with the city clerk by the petitioners." Section 9 further provides that the board appealed to "shall within thirty days render a decision thereon . . . and . . . shall submit notice thereof forthwith to the city council. Within ten days after the expiration of said period of eighty days, if no appeal has been taken, or after receipt of a decision on any appeal in favor of the validity or sufficiency of such petition or signatures, as the case may be, the city council shall . . . transmit such certified copy to the city clerk," and if such "certified copy is so transmitted to the city clerk at least thirty days before the regular city election, the question proposed by the petition shall be submitted . . . to a vote . . . at said . . . election, otherwise it shall be submitted at the regular city election next following the aforesaid election."

The foregoing provisions clearly indicate that the various steps for getting a plan on the ballot are to be taken expeditiously. A cumbersome, slow moving procedure would enable those opposed to a plan, through dilatory tactics of one sort or another, to postpone its submission to the voters until its adoption might be either unlikely or difficult. In any event it would afford opportunity for undue delay in bringing a plan before the voters — a result that we cannot believe was intended. Since the right of appeal to the applicable board under § 9 is given to "any registered voter of the city," there might be numerous appeals, and if hearings had to be conducted it would often be impossible for the

board, even if the appeals were heard together, to conclude them and render a decision within the thirty days prescribed by the statute. In short, to construe § 9 as requiring a hearing would result in rendering the statute unworkable in many cases. See *Morrissey* v. *State Ballot Law Commission*, 312 Mass. 121, 135.

The provisions of § 12 of c. 53 do not aid the petitioners. Section 12 defines the "applicable board" mentioned in § 9 but it does not require the granting of a hearing in appeals under that section. True, § 12 provides that "Boards in cities and towns may, at hearings on such objections and questions, summon witnesses, administer oaths and require the production of books and papers." But "such objections and questions" have reference to the preceding paragraph in the section which reads, "Objections to nominations for state offices, and all other questions relating thereto, shall be considered by the state ballot law commission; to nominations for city offices . . . by the board of registrars and the city solicitor; and to nominations for town offices, by the board of registrars." Manifestly § 12 has to do with objections to nominations for State, city and town offices, and does not purport to define the procedure for an appeal under § 9.

We are mindful of the difference between a construction which does not call for a hearing and one that does. The advantages and desirability of having decisions made after notice and hearing are such that only compelling reasons would lead us to the conclusion here reached. Such reasons, we think, exist here. It does not follow from our interpretation of § 9 that the applicable board appealed to is without the power to make their determination either in whole or in part through the medium of a hearing. See *Morrissey* v. *State Ballot Law Commission*, 312 Mass. 121, 135. Such a course may often be advisable. We hold only that it is not required.

*Order sustaining demurrer affirmed.*
*Petition dismissed.*