MARY B. NEWMAN *vs.* SECRETARY OF THE COMMONWEALTH & others.

Suffolk. November 10, 1959. — November 16, 1959.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Constitutional Law*, Referendum. *Equity Pleading and Practice*, Discontinuance, Parties.

Members of an Authority created by statute and the Authority, made parties defendant to a suit in equity by the bill, remained as parties even though they filed no answers and the plaintiff in a stipulation waived all allegations of the bill concerning the members and stated that she "discontinue[d]" as to them. [750]

A petition seasonably filed with the Secretary of the Commonwealth for a referendum on a law under art. 48 of the Amendments to the Massachusetts Constitution, The Referendum, bearing the signatures and addresses of the requisite number of certified registered voters, but not containing a statement, signed under the penalties of perjury by the circulator of the petition, that each person whose name appeared thereon signed it in person, failed to comply with G. L. c. 53, § 22B, inserted by St. 1938, c. 191, and the Secretary was under no duty to provide blanks for the use of subsequent signers. [752–753]

BILL IN EQUITY, filed in the Superior Court on October 15, 1959.

The suit was reserved and reported by *Paquet*, J.

The case was submitted on briefs.

*Roger H. Woodworth*, for the plaintiff.

*Edward J. McCormack, Jr.*, Attorney General, & *James J. Kelleher*, Assistant Attorney General, for the Secretary of the Commonwealth.

WILKINS, C.J.   This is a bill for a declaratory decree as to whether St. 1959, c. 608, is a law subject to the referendum provisions of the Constitution of the Commonwealth.   Art. 48 of the Amendments, The Referendum.   The facts were agreed.   The case is here upon a reservation and report without decision by a justice of the Superior Court.

The only defendant to file an answer is the Secretary of the Commonwealth.   The members of the Mount Greylock Tramway Authority and the Authority itself were made parties defendant in the bill as filed.   The plaintiff waived all allegations concerning the members and in a stipulation stated that she "discontinues" against them.   See *Kempton* v. *Burgess*, 136 Mass. 192; *Boyle* v. *Building Inspector of Malden*, 327 Mass. 564, 568.   The members and the Authority are still parties to the case.   *Haverhill* v. *DiBurro*, 337 Mass. 230, 235.

Statute 1959, c. 608, was signed by the Governor on September 17, 1959.   It is entitled "An Act directing the Greylock Reservation Commission to set aside a certain area of said reservation as a memorial park and opening the remainder of said reservation to hunting, fishing and trapping."   Section 1 of c. 608 refers to the Greylock Reservation Commission, which was established by St. 1898, c. 543, and which by St. 1933, c. 336, was given the authority to maintain the Mount Greylock War Memorial.

The remaining sections of c. 608 have nothing to do with the Greylock Reservation Commission.   Instead they purport to amend two statutes relating to the Mount Greylock Tramway Authority.   The Authority was created by St. 1953, c. 606, and was "authorized and empowered to construct, maintain, repair and operate on Mount Greylock a toll tramway, and to issue its toll tramway revenue bonds, payable solely from revenue, to pay the cost of such tramway and appurtenances thereto."   By St. 1955, c. 476, the Authority was authorized to construct shops, restaurants, and other facilities and to operate or lease them.   In St. 1953, c. 606, § 2, there was a specific disclaimer that the credit of the Commonwealth was pledged and the Commonwealth made

no guaranty of the principal or the interest on the bonds. In St. 1955, c. 476, the Authority was empowered to issue revenue bonds "payable solely from revenues for the purpose of paying all or any part of the cost of the project," § 2 (b); and to incur expenses "payable solely from the proceeds of revenue bonds issued under the provisions of this act or from the revenues of the project," § 2 (g).

Section 2 of St. 1959, c. 608, is a repeal of St. 1953, c. 606, § 2, and provides that the payment of interest on the bonds shall be guaranteed by the Commonwealth. This is the provision which the plaintiff challenges in particular, and is the occasion for the case before us.

A principal issue of substance argued in the briefs is whether c. 608 is excluded as a subject of a referendum petition by reason of art. 48 of the Amendments, The Referendum, III, § 2, which excludes any law "the operation of which is restricted to a particular town, city or other political division or to particular districts or localities of the commonwealth."

We do not reach this issue, because at the outset we are faced with questions as to whether the form of the petition meets the formal requirements of pertinent statutes. Article 48 of the Amendments, The Referendum, III, § 3, as amended by art. 74, § 2, and art. 81, § 4, provides in part: "A petition asking for a referendum on a law, and requesting that the operation of such law be suspended, shall first be signed by ten qualified voters and shall then be filed with the secretary of the commonwealth not later than thirty days after the law that is the subject of the petition has become law. The secretary of the commonwealth shall provide blanks for the use of subsequent signers, and shall print at the top of each blank a fair, concise summary of the proposed law as such summary will appear on the ballot together with the names and residences of the first ten signers. If such petition is completed by filing with the secretary of the commonwealth not later than ninety days after the law which is the subject of the petition has become law a number of signatures of qualified voters equal in

number to not less than two per cent of the entire vote cast for governor at the preceding biennial state election,[1] then the operation of such law shall be suspended . . .."

The petition for a referendum was filed with the Secretary of the Commonwealth on October 14, 1959. It consisted of three sheets, the first bearing the signature of a resident of the town of Lincoln, the second the signatures of eight residents of the city of Cambridge (one of whom was the plaintiff), and the third the signatures of three residents of the city of Cambridge. Each name is followed by an address. The first sheet bears the certificate of the registrars of voters of the town of Lincoln that the signer is a registered voter of that town. The other two sheets bear a similar certificate of the "Cambridge election commission."

The Secretary of the Commonwealth has not provided blanks for subsequent signers. He contends, among other things, that there has been a failure to comply with G. L. c. 53, § 22B, inserted by St. 1938, c. 191, which is entitled "An Act tending to prevent fraudulent or invalid signatures on initiative and referendum petitions." Section 22B provides, "Each initiative or referendum petition filed with the state secretary shall contain a statement, signed under the penalties of perjury by the person who circulated the petition, that each person whose name appears on said petition signed the same in person."

The meaning of § 22B is clear, and so is its purpose, which is to fix upon the person who circulates a petition responsibility for any fraudulent and invalid signatures. There are no words excepting the first ten signers from its mandate. Since there must be many thousand subsequent signers, who must come from at least four counties (art. 48 of the Amendments, General Provisions, II), it obviously could not have been contemplated that one person would circulate the blanks provided by the Secretary among them all. See *Lincoln* v. *Secretary of the Commonwealth,* 326 Mass. 313, 320. The statute must be interpreted as applicable to the

---

[1] It is alleged in the bill and admitted in the answer that this number is 37,992.

person circulating each particular blank. As there has been no compliance, the question for determination is what should be the effect of noncompliance upon the constitutional duty of the Secretary to provide blanks for subsequent signers. This issue differs from that presented by defects in statutory compliance in matters required for the benefit of the registrars of voters, whose certification that a signer is a registered voter is binding upon the ballot law commission (*Compton* v. *State Ballot Law Commn.* 311 Mass. 643, 656–657) and the Secretary of the Commonwealth and the Attorney General (*Bowe* v. *Secretary of the Commonwealth*, 320 Mass. 230, 239). Section 22B relates to the act of filing with the Secretary. In *Morrissey* v. *State Ballot Law Commn.* 312 Mass. 121, 145–146, the question was left open whether the ballot law commission had jurisdiction to reject a petition for violation of that section.

Article 48 of the Amendments, General Provisions, VII, provides, "This article of amendment to the constitution is self-executing, but legislation not inconsistent with anything herein contained may be enacted to facilitate the operation of its provisions." Section 22B falls within this category. See *Morrissey* v. *State Ballot Law Commn.* 312 Mass. 121, 139–140. We need not decide whether its requirements could be waived by the Secretary. The fact is that he did not. He was under no obligation to bring the omission to the attention of the signers. He cannot be forced to provide blanks for subsequent signers without the filing of this important safeguard against forgery and fraud.

We need not decide other issues which have been argued.

Let a final decree be entered declaring that the defendant Secretary of the Commonwealth is under no duty to provide blanks for the use of subsequent signers by reason of failure to comply with G. L. c. 53, § 22B, inserted by St. 1938, c. 191.

*So ordered.*