JACK E. MOLESWORTH & OTHERS *vs.* STATE BALLOT LAW
COMMISSION & another
(and a companion case[1]).

Suffolk.   July 7, 1964. — July 22, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
SPIEGEL, & REARDON, JJ.

*Constitutional Law,* Referendum.   *Jurat.*

The limitation in the last sentence of G. L. c. 53, § 7, as amended through St. 1963, c. 210, on the number of signatures on nomination papers to be received by the Secretary of the Commonwealth is not "apt" with respect to a referendum petition and is not made applicable thereto by § 22A, as amended through St. 1948, c. 596.   [26–27]

That registrars of voters in certifying signatures on a sheet for subsequent signers of a referendum petition did not comply with the provision of G. L. c. 53, § 22A, as amended through St. 1948, c. 596, that they should receipt for the sheet when received and obtain a receipt for it when delivered did not require exclusion of the certified signatures on the sheet in determining the total number of signatures to the petition.   [27]

G. L. c. 53, § 22B, as amended through St. 1961, c. 344, does not require that the one executing the jurat on a sheet for subsequent signers of a referendum petition personally observe them sign their names on the sheet, and his failure to do so does not disqualify their signatures. [27–28]

Two PETITIONS filed in the Superior Court on June 5, 1964, and June 3, 1964, respectively.

———

[1] The companion case is by the same petitioners against the Secretary of the Commonwealth. Charles H. McGlue, a registered voter of Boston, intervened in each case as a party respondent.

The cases were reported by *Macaulay, J.*

*Noel G. Posternak* (*Irving Goodman & Morris J. Chaban* with him) for the petitioners.

*John E. Sullivan,* Assistant Attorney General, for the respondents.

*Charles H. McGlue,* intervener, pro se.

WILKINS, C.J.    These two petitions challenge the correctness of a majority decision of the State Ballot Law Commission invalidating a petition for referendum to repeal St. 1963, c. 506, which provides for an increase in salary and expense allowances for members of the General Court. In *Molesworth* v. *Secretary of the Commonwealth,* 347 Mass. 47, an emergency preamble was adjudged sufficient to make the statute effective forthwith, and an order was entered directing the Secretary to take no further steps for a referendum on the statute as a nonemergency measure.

The first of the present cases is a petition under G. L. c. 30A, § 14, by ten citizens of the Commonwealth and registered voters in the city of Boston, and seeks a review of the decision of the respondent commission.    The second case is a petition for a writ of mandamus to require the respondent Secretary of the Commonwealth to prepare and print information to voters with respect to the referendum and to print ballots for the State election containing that question.

The facts are agreed, and the cases are here upon report without decision by a judge of the Superior Court.    In substance, the agreed facts apply to both cases, and, among other things, bring before us the decision of the commission and a document entitled "the return and record" of the commission which was filed in the first case.

Statute 1963, c. 506, entitled "An Act further regulating the compensation, travel allowance and expenses of the Members of the General Court," was approved on June 28. On July 9 pursuant to art. 48 of the Amendments to the Constitution, The Referendum, III, § 4, entitled "Petitions for Referendum on an Emergency Law or a Law the Suspension of which is not asked for," the petitioners filed with the Secretary a petition for referendum to repeal

Molesworth v. State Ballot Law Commission.

c. 506. After a summary was furnished by the Attorney General, the Secretary provided blanks, which contained the summary and the names and residences of the first ten signers, for the use of subsequent signers. The petitioners secured and made timely filing of 88,149 subsequent signers from twelve counties. The number of required signatures was 31,637, which was "one and one half per cent of the entire vote cast for governor at the preceding biennial state election." See art. 81, § 5, of the Amendments, amending art. 48 of the Amendments, The Referendum, III, § 4. Of these not more than 7,910 signatures could be from one county. See art. 48 of the Amendments, General Provisions, II;[1] Lincoln v. Secretary of the Commonwealth, 326 Mass. 313.

On October 31, 1963, the intervener McGlue and another each filed protests with the Secretary in accordance with G. L. c. 53, § 22A (as amended through St. 1948, c. 596). The commission conducted hearings relative to the protests and the validity of the signatures of qualified voters, and on June 1, 1964, filed its decision with the Secretary.

All the members of the board agreed that there were instances of fraud and perjury in the preparation of some of the petitions. But they could not agree upon the number of valid signatures. The majority found that the number was 29,299, while the minority member found that it was 39,040.[2] The disagreement was in matters of law. The

---

[1] "Not more than one-fourth of the certified signatures on any petition shall be those of registered voters of any one county."

[2]

|  | Signatures filed | Signatures found valid | |
|  |  | By majority | By minority |
| Barnstable | 1,170 | 1,102 | 1,102 |
| Berkshire | 366 | 207 | 207 |
| Bristol | 9,188 | 918 | 5,104 |
| Essex | 7,652 | 3,846 | 3,746 |
| Franklin | 287 | 83 | 83 |
| Hampden | 2,518 | 864 | 864 |
| Hampshire | 39 | 12 | 12 |
| Plymouth | 4,643 | 2,522 | 2,522 |
| Suffolk | 8,844 | 1,779 | 1,779 |
| Worcester | 9,411 | 2,146 | 7,801 |
| Middlesex | 28,245 | 7,910 | 7,910 |
| Norfolk | 15,786 | 7,910 | 7,910 |
|  | 88,149 | 29,299 | 39,040 |

majority were of opinion that "a false jurat on a sheet invalidates the entire sheet"; and that "a forged name on a sheet invalidates the entire sheet for this one forgery affects the genuineness of the jurat of the circulator." The minority member was of contrary opinion. He also took the view that the sole purpose of G. L. c. 53, § 22B (as amended through St. 1961, c. 344), is to fix upon the circulator of a petition criminal responsibility for any fraudulent and invalid signatures if he elects to sign the jurat, and that it was not the intention of the Legislature to disfranchise those voters who actually did sign.

1. The commission ruled that it need consider only 44,292 of the 88,149 signatures which the Secretary accepted for filing. Reliance was placed upon G. L. c. 53, § 7, as amended by St. 1963, c. 210, which contains the provision, "The state secretary shall not receive nomination papers for a candidate after receiving such papers containing a sufficient number of certified names to make a nomination, increased by two fifths thereof." It is urged that the matter is controlled by G. L. c. 53, § 22A (as amended through St. 1948, c. 596), which reads in part: "The provisions of law relative to the signing of nomination papers of candidates for state office, and to the identification and certification of names thereon and submission to the registrars therefor, shall apply, so far as apt, to the signing of initiative and referendum petitions and to the identification and certification of names thereon . . . ."

We reject this contention. Not only did the Secretary receive all the signatures presented for filing, but no specific signatures were excluded by the commission on this ground. Further, we are of opinion that the language quoted above from § 7, which is confined to nomination papers, would not be apt for application to a referendum petition. We do not believe that the Legislature intended that it should so apply. The preparation and filing of nomination papers would most reasonably be expected to remain within the control of a candidate and his supporters. But a referendum petition, which must have broad circulation, would not

necessarily remain in the hands of any single group. *Lincoln* v. *Secretary of the Commonwealth,* 326 Mass. 313, 320.

There is significantly no provision for determining what signatures should be received and what signatures rejected by the Secretary. Indeed, if there were, it would face grave constitutional difficulties. We read in art. 48, General Provisions, VII, "This article of amendment to the constitution is self-executing, but legislation not inconsistent with anything herein contained may be enacted to facilitate the operation of its provisions." But there is significantly a provision limiting the proportion of signatures from a single county. See art. 48, General Provisions, II, *ante,* p. 25. Unlike action with respect to fraud (*Morrissey* v. *State Ballot Law Commn.* 312 Mass. 121, 139-141), the Legislature would not have been facilitating the operation of the amendment had it sought to make a further and inconsistent limitation on signatures to be received for filing.

2. The commission informed the Attorney General that some boards of registrars or election commissions had not complied with a requirement of G. L. c. 53, § 22A, which provides: "Registrars shall receipt in writing for each initiative or referendum petition submitted to and received by them, and shall deliver such petitions only on receiving written receipts therefor." The Attorney General advised the commission, and we think correctly, that it lacked jurisdiction to consider such violations. Accordingly, the commission excluded no signatures on this ground. It did, however, find that there were 65,697 such signatures, and now argues that this court should exclude them. We do not accept this contention, as we perceive no expression of such a legislative intent. Whether such an expression would be constitutional, we need not now decide.

3. Section 22B provides: "Each initiative or referendum petition filed with the state secretary, other than the petition signed by the ten original signers, shall contain a statement, signed under the penalties of perjury by the person who circulated the petition, that each person whose

name appears on said petition signed the same in person.''

The intervener contends that § 22B should be construed to require that the circulator be present and see each person sign. In the arguments before us there was agreement that the commission so ruled. This also appears from the commission's so called "return and record," where it is stated: "A further breakdown of signatures disqualified by this Commission for false jurats is as follows: Signatures Disqualified Because Jurator Did Not See Purported Petitioners Sign or Because Jurator Did Not Circulate the Petitions." The total number of these is given as 7,644.[1] It was also agreed at the arguments, and it is obvious, that if this ruling was in error, there would be more than enough qualified signatures to place the measure on the ballot.

Because we are of opinion that the ruling was in error, we do not pause to consider whether it was within the jurisdiction of the commission to reject the petition for violations of § 22B. See *Morrissey* v. *State Ballot Law Commn.* 312 Mass. 121, 146. The statute does not expressly make this requirement. There is no doubt, as the respondents contend, that in signing the certificate the "jurattor" is certifying, under the penalties of perjury, that the names on the petition were signed in person as provided in § 22B. It was regarding this aspect that in *Newman* v. *Secretary of the Commonwealth,* 339 Mass. 749, 752, we said, "The meaning of § 22B is clear, and so is its purpose, which is to fix upon the person who circulates a petition responsibility for any fraudulent and invalid signatures." But it does not follow that if one elects to sign the jurat and so assumes the responsibility for fraudulent or invalid signatures, he cannot rely upon some trusted person but must himself have been an eyewitness to the affixing of every signature. We are unwilling by implication to read this important requirement into the statute when its expression could be so readily accomplished.

Since our conclusion on this point is decisive of the cases, we do not consider other questions argued.

---

[1] The details are Barnstable 10, Bristol 4,205, Essex 1,107, Franklin 36, and Worcester 2,286.

4.   In the case under G. L. c. 30A, § 14, a decree is to enter setting aside the decision of the State Ballot Law Commission.   In the mandamus case an order is to enter directing the Secretary of the Commonwealth to prepare and print information to voters with respect to the referendum to repeal St. 1963, c. 506, and to print ballots for the State election containing that question.

*So ordered.*