ELWOOD S. MCKENNEY vs. COMMISSION ON JUDICIAL
CONDUCT.[1]

Suffolk. March 22, 1979. — April 6, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS,
& ABRAMS, JJ.

*Judge. Commission on Judicial Conduct. Statute*, Construction.

This court deemed it appropriate to grant declaratory relief in an
action against the Commission on Judicial Conduct, even though it
involved a matter pending before the commission, where the com-
mission expressly urged that a decision on the merits be reached,
the action involved a question of first impression which was purely
one of law, the subject was one of public importance, and it con-
cerned the very basis on which the commission might proceed in a
large number of matters which come before it. [793-794]

The provision of G. L. c. 211C, § 2, that "[e]very complaint shall be
signed by the complainant under the pains and penalties of per-
jury" does not require that the complainant have personal knowl-
edge of the conduct complained of. [796-801]

Discussion of the essential elements of a valid complaint filed under
G. L. c. 211C, § 2, with the Commission on Judicial Conduct. [801-
802]

A complaint filed with the Commission on Judicial Conduct pursuant
to G. L. c. 211C, § 2, which made no allegations of misconduct but
merely stated that some of the allegations contained in a transcript
of a television report annexed to the complaint might constitute
allegations of judicial misconduct was not sufficiently specific to
permit a judge reasonably to make a response and, therefore, could
not in that form be the basis for an investigation by the commission.
[802]

---

[1] The commission members are: Allan G. Rodgers, Esq., chairman,
Florence R. Rubin, vice chairman, Carolyn K. Dik, Archie C. Epps, III,
Hon. Edith W. Fine, Richard D. Gelinas, Esq., John M. Harrington, Jr.,
Esq., Hon. Sanford N. Keedy, and Hon. Elbert Tuttle.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on March 8, 1979.

The case was reported by *Liacos, J.*

*J. Albert Johnson* (*Thomas J. May* with him) for the plaintiff.

*S. Stephen Rosenfeld,* Assistant Attorney General (*Margot Botsford,* Assistant Attorney General, with him) for the Commission on Judicial Conduct.

BY THE COURT. The plaintiff is the First Justice of the District Court Department, Roxbury Division. On March 8, 1979, he filed a complaint in the Supreme Judicial Court for the county of Suffolk against the members of the Commission on Judicial Conduct (commission), which is established pursuant to G. L. c. 211C, § 1. He seeks, under G. L. c. 231A, a determination that a purported complaint (complaint) against him filed with the commission did not comply with the requirements of G. L. c. 211C, § 2, and he further seeks an order directing the commission to dismiss the complaint. A single justice of this court reserved decision and reported the case to the full court on the pleadings, a statement of agreed facts, and certain other documents.

The judge argues that the statutory requirement that "[e]very complaint shall be signed by the complainant under the pains and penalties of perjury" (G. L. c. 211C, § 2, as appearing in St. 1978, c. 478, § 114), means that the complainant must have personal knowledge of the conduct complained of. Because in the complaint itself the complainant expressly disclaims personal knowledge of the allegations set forth therein, the judge contends that the commission lacks authority to consider the complaint and must dismiss it. The commission argues in response that complaints of alleged judicial misconduct need not be based on facts within the complainant's personal knowledge.

We summarize our conclusions. We believe that we should treat this matter on its merits even though the judge's challenge is interlocutory. We conclude, on the

basic issue, which is one solely of statutory construction, that a complainant need not have personal knowledge of the facts alleged in a complaint. The adequacy of the complaint in other respects has not been argued before us and is a matter for consideration by the commission. We believe it appropriate, however, to discuss the essential elements of a complaint brought before the commission. Finally, we point out certain obvious deficiencies in the complaint as filed, but note that, in the exercise of its constitutional and statutory obligations of general superintendence of the courts of this Commonwealth, this court has the power in any event to order an investigation of allegations contained in the complaint.

The complaint was filed with the commission on January 30, 1979, by Carolyn K. Dik, a member of the commission. The complaint referred to alleged misconduct of the judge (and of two other judges in the District Court Department) reported on a television broadcast on Thursday, January 11, 1979. A copy of a transcript, taken from a videotape of the thirty-two minute television report, was annexed to the complaint. Dik's complaint attested to the substantial accuracy of the transcript but stated, "I do not have personal knowledge of the allegations contained in the videotape and 'transcript.' " The complaint further recited that "[b]ecause some of the allegations contained in this material may constitute allegations of judicial misconduct, I request the Commission to make an appropriate evaluation of them and to take such action, if any, as it may deem appropriate." The complaint stated that it was "[s]igned under the pains and penalties of perjury in accordance with G. L. c. 211C, § 2."

The transcript of the television broadcast describes certain incidents that have no apparent relation to the judge, but numerous others that do. Some of these descriptions are general, and others may not be sufficiently definite to permit ready identification of the particular transactions. There are, however, references to a specific bail hearing; to the judge's refusal to permit the tape

recording of proceedings before him; to his relationship with certain attorneys whom he appointed to represent indigent criminal defendants; to his relationship with certain court employees who were hired or promoted with his assistance; to the circumstances under which the judge and his wife acquired two automobiles; and to the use of court officers and the courthouse telephone for personal matters.

The commission sent a copy of the complaint to the judge, and, on March 1, 1979, he filed with the commission a document entitled "Denial of Jurisdiction." That document demanded that the commission take no action on the complaint except to dismiss it and to advise him that it had done so. He based his demand on Dik's absence of "personal knowledge of the allegations contained in the video tape and 'transcript.'" On the same day, the judge filed a complaint in the Superior Court seeking a preliminary injunction against the commission. The plaintiff's request for an injunction was denied on March 5, 1979. The Superior Court judge expressed doubts concerning that court's jurisdiction over the subject matter of the complaint. This action was commenced three days later.[2]

We believe it appropriate to grant declaratory relief in this proceeding. We have often declined to grant declaratory or other relief in a matter which is pending before an administrative agency until the agency proceedings are concluded. See, e.g., *Assuncao's Case*, 372 Mass. 6, 8-9 (1977); *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination*, 364 Mass. 444, 450-453 (1973). However, the commission has expressly urged us to decide this matter on the merits. See *St. Luke's Hosp.* v. *Labor Relations Comm'n*, 320 Mass. 467, 470 (1946). It is a question of first impression; it involves purely an issue

---

[2] The plaintiff has filed a motion for voluntary dismissal of the Superior Court action. See Mass. R. Civ. P. 41(a)(2), 365 Mass. 803 (1974).

of law; the subject is one of public importance; and it concerns the very basis on which the commission may proceed in a large number of matters which may come before it. In such circumstances, declaratory or other dispositive relief is appropriate (see *Murphy* v. *Administrator of the Div. of Personnel Administration, ante* 217, 221-222 [1979]; *Sydney* v. *Commissioner of Corps. & Taxation,* 371 Mass. 289, 294-295 [1976]; *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination, supra* at 450-452) and has been granted (see, e.g., *St. Luke's Hosp.* v. *Labor Relations Comm'n, supra;* cf. *Gallagher* v. *Metropolitan Dist. Comm'n,* 371 Mass. 691, 699 [1977] [court reached issue of law despite plaintiff's failure to exhaust administrative remedies]). We stress, however, the extraordinary nature of this proceeding and shall look with disfavor on attempted interlocutory review of commission action in the future. See, e.g., *Assuncao's Case, supra; Gordon* v. *Hardware Mut. Cas. Co.,* 361 Mass. 582, 584-588 (1972).

The authority of the commission is entirely statutory and is defined in G. L. c. 211C.[3] The commission consists of nine members, three judges appointed by this court, three members of the bar appointed by the Chief Administrative Justice of the Trial Court, and three lay persons appointed by the Governor. G. L. c. 211C, § 1. "[U]pon complaint of any person, including from its own membership," the commission must investigate "the action of any judge that may . . . bring the judicial office into disrepute or constitute a breach of the Canons of Judicial

---

[3] The commission, in a sense, is a successor to a committee on judicial responsibility appointed by this court pursuant to S.J.C. Rule 3:17, as amended, 372 Mass. 925 (1977). Rule 3:17 has not been rescinded, but there is no claim that the commission may proceed in this matter under S.J.C. Rule 3:17.

The Dik complaint was filed after the commission was established under G. L. c. 211C. The procedures governing the statutory commission's investigation of complaints are substantially more restrictive than those governing investigations by the committee on judicial responsibility appointed by this court.

Ethics as promulgated by the supreme judicial court." G. L. c. 211C, § 2, first par. Every complaint must be made to or by the commission in writing and must "be signed by the complainant under the pains and penalties of perjury." *Id.* at third par. When a complaint is filed, the commission's executive secretary must mail or deliver a copy of the complaint to the judge. *Id.* at second par. The commission may dismiss a complaint within twenty-one days of its receipt. *Id.* The judge has thirty days from his notice of the complaint to respond in writing. *Id.* at fifth par. The commission may not investigate the matter until the judge has responded in writing or failed to do so within that time. *Id.* No investigation may be conducted until the commission has recommended that an investigation of a particular complaint be conducted or that this court appoint special counsel to conduct the investigation of a particular matter. *Id.* If the "commission finds sufficient cause exists and that a hearing is warranted, the complainant shall be heard and the judge shall be heard and permitted to present evidence, subpoena and cross-examine witnesses. Upon completion of any investigation, the commission shall recommend an appropriate disposition of the matter under investigation with a statement of its reasons and shall forward its final recommendation with a statement of its reasons to the complainant" and to this court for its consideration and "further action, if any." *Id.* at ninth par.

This statutory pattern indicates that the commission has no authority to "investigate" alleged judicial misconduct until a complaint has been filed with it.[4] Indeed, the

---

[4] We would regard as appropriate, and as not constituting an "investigation," any acts of assistance, by the commission or its secretary and staff, in the preparation of a complaint in a proper form. Rule 6 of the Operating Rules of the Commission on Judicial Conduct (1979), approved by this court, authorizes the commission's secretary to "furnish blank complaint forms to any person," and, if necessary, to "assist the complainant in reducing the grievance to writing."

commission is forbidden to investigate the subject matter of a complaint, no matter how serious, until the judge has responded to it in writing (or until thirty days have passed since the judge had notice of the complaint and he has not responded)[5] and the commission has recommended that an investigation of the complaint be conducted. *Id.* at fifth par.

There is no explicit requirement that a complaint filed with the commission must be signed by a person who has personal knowledge of the facts set forth in the complaint. The requirement in § 2 that the complaint be signed under the pains and penalties of perjury does not carry with it an implication that the signer must have such personal knowledge. There is no such tradition in the law of this Commonwealth. We are unaware of any statute that requires a statement to be signed "under penalties of perjury" which also specifies that the signer must have personal knowledge of the information contained in the statement. On the contrary, some statutes attach the penalties of perjury to a statement made to the signer's best knowledge, information, or belief. See G. L. c. 59, § 52 ("best knowledge and belief"); G. L. c. 195, § 6 ("knowledge, information and belief").[6] Admittedly, some statutes threatening the penalties of perjury require the disclosure of information that, for the most part, might be

---

[5] If the judge does not receive a copy of the complaint within twenty-one days of its filing, the commission must dismiss the complaint. G. L. c. 211C, § 2, second par.

[6] A search warrant may be obtained on an affidavit based on hearsay (G. L. c. 276, § 2B; *Commonwealth* v. *Von Utter*, 355 Mass. 597, 600 [1969]), although personal knowledge, where available, is preferred (*Commonwealth* v. *Bond*, 375 Mass. 201, 206 [1978]). An application for a wiretap warrant by the Attorney General or a district attorney, and affidavits in support of such an application, may be based either on personal knowledge or on information and belief. G. L. c. 272, § 99(F)(3). In each case, the facts on which the belief is based must be stated. See G. L. c. 276, § 2B (affiant must state "the facts, information, and circumstances" on which he relies); G. L. c. 272, § 99(F)(3) (sources of information and belief must be disclosed or described).

expected to be within the personal knowledge of the declarant.[7] The vast majority of such statutes, however, require information of which the declarant would not ordinarily have personal knowledge.[8]

The statute involved in *Molesworth* v. *State Ballot Law Comm'n*, 348 Mass. 23 (1964), provides that "[e]ach initiative or referendum petition filed with the state secretary . . . shall contain a statement, signed under the penalties of perjury by the person who circulated the petition, that each person whose name appears on said petition signed the same in person." G. L. c. 53, § 22B. The Ballot Law Commission disallowed certain signatures because the "jurator" did not see the purported petitioners sign the petition. The court rejected the requirement of personal knowledge of the affixing of every signature: "We are unwilling by implication to read this important requirement into the statute when its expression could be so readily accomplished." *Id.* at 28.

In cases involving a statutory requirement of a petition "verified by oath" in order to initiate an investigation of solvency, our decisions have rejected personal knowledge

---

[7] E.g., G. L. c. 7, § 36 (statement by seller of real property to Commonwealth as to identity of all persons with beneficial interest in property); G. L. c. 31, § 20 (civil service application for examination or registration); G. L. c. 90, § 3 (registration by nonresident student motor vehicle operator); G. L. c. 276, § 61 (certificate of surety on bail bond).

[8] Several statutes require trustees or corporate officers to verify, under the penalties of perjury, information of which they may have no personal knowledge. See, e.g., G. L. c. 94, § 42D (milk buyer's list of assets, liabilities, and disbursements); G. L. c. 175, § 73 (fire insurance company subscription list); G. L. c. 182, § 12 (report by trustees as to number of certificates issued and outstanding). Other statutes require or make provision for obtaining information, under the penalties of perjury, from persons who do not ordinarily have personal knowledge of the subject matter. See, e.g., G. L. c. 35, § 19 (vouchers or accounts for payment of county salaries); G. L. c. 41, § 52 (person presenting bill to city or town must take oath if required); G. L. c. 51, § 10A (innkeeper must deliver to registrar of voters list of names of all residents over the age of three); G. L. c. 262, § 8A (deputy sheriffs must jointly sign, under penalties of perjury, annual account for process fees).

as a requirement. *O'Neil* v. *Glover*, 5 Gray 144 (1855), involved a statute which provided that certain creditors "may apply [for a warrant against a debtor] by petition, stating the facts and the nature of the claims, verified by oath." *Id.* at 156. The court held that the statute was satisfied by a petition signed by the creditor's attorney. The court noted the preliminary nature of the petition because the petition constituted only a ground for notice to the debtor, which would be followed by an examination and hearing at which the commissioner or judge of probate would exercise discretion in determining whether there was cause to proceed. *Id.* at 156-157. In *American Carpet Lining Co.* v. *Chipman*, 146 Mass. 385 (1888), the court found a similar requirement of verification satisfied by an oath given according to the best of the affiant's knowledge and belief. The court observed that the context in which an oath is required should be considered, and reaffirmed its conclusion in *O'Neil* v. *Glover, supra,* that personal knowledge was not required to show cause for examining an alleged debtor. 146 Mass. at 388-390.

No other provisions in G. L. c. 211C, § 2, justify an inference that the complainant must have personal knowledge of the facts alleged in the complaint. The judge points to three provisions in support of his contention. (1) The fourth paragraph of § 2 requires every complainant "to state in the complaint whether or not the matter complained about is the subject of appeal and whether an appeal will be entered." There are many matters of potential complaint to which this requirement is inapplicable as a practical matter. The requirement, when it is applicable, bears on the complainant's knowledge of whether an appeal has been or will be entered, but it is unrelated to any requirement of personal knowledge of the underlying, alleged grievance. (2) The fact that the commission is not to consider matters occurring more than one year prior to the date of the complaint, except for good cause or as part of a pattern of conduct continuing into the one-year period (G. L. c. 211C, § 2, sixth par.),

in no way implies a requirement of personal knowledge on the part of the complainant. (3) The requirement (*id.* at ninth par.) that the commission hear the complainant in the course of any hearing it may hold assures the complainant of the right to present his position to the commission in person. But that requirement, and the right of the judge to cross-examine the complainant, tell us nothing about what personal knowledge the complainant must have.

In further support of his argument that personal knowledge by the complainant is required, the judge has submitted affidavits which he contends show that the legislative history of G. L. c. 211C requires such a construction. Legislative history is, of course, an aid to statutory interpretation where the statutory language is ambiguous. See *Rosenbloom* v. *Kokofsky*, 373 Mass. 778, 780-781 (1977); *Hoffman* v. *Howmedica., Inc.*, 373 Mass. 32, 36-37 (1977); *Massachusetts Mut. Life Ins. Co.* v. *Commissioner of Corps. & Taxation*, 363 Mass. 685, 690-691 & n.8 (1973). We have concluded, however, that the language of G. L. c. 211C clearly does not require personal knowledge on the part of the complainant. Even if G. L. c. 211C were ambiguous on the subject, the affidavits submitted by the judge are not appropriate legislative history. The six affidavits of judges instrumental in the drafting of G. L. c. 211C do not mention any requirement of a complainant's personal knowledge and, in any event, these postenactment, private views of citizens supporting legislation are not relevant legislative history. See *Browne* v. *Turner*, 174 Mass. 150, 159 (1899). A seventh affidavit, from the House Chairman of the Committee on the Judiciary, does refer to the intention of all members of that committee that a complaint signed under the pains and penalties of perjury "have its usual legal meaning; namely, that the complainant verify of his own personal knowledge the allegations of misconduct." This postenactment affidavit of a single legislator is not relevant legislative history either.[9] See *Plunkett* v. *Old Colony Trust Co.*, 233 Mass. 471, 474 (1919); *Browne* v. *Turner, supra.*

The requirement that the complaint be signed under the pains and penalties of perjury impresses the seriousness of the matter on the complainant and guards against charges based on intentional misrepresentations. The fact that a complainant does not have firsthand knowledge of facts cited in a complaint could, of course, have a bearing on the question whether the complaint is worthy of investigation, but it does not by itself render the complaint wholly ineffective.

The immediate consequence of the filing of a complaint can be no more than the initiation of a confidential investigation by the commission. The judge is given an opportunity to respond to the complaint. The commission must exercise its discretion whether to investigate the subject of the complaint and must determine whether sufficient cause exists to warrant a hearing. If an evidentiary hearing is held, the judge is given the full rights of an adversary party.[10] On completion of the investigation, the commission must recommend an appropriate disposition of the matter, setting forth its reasons to the complainant and to this court for its consideration "and further action, if any." It can thus be seen that the complaint is a strictly preliminary, although important, aspect of any proceeding.

[9] For these same reasons, the affidavit of the vice chairman of the commission, submitted by the commission and concerning conversations with legislators, cannot be the basis for resolving any ambiguity in G. L. c. 211C. The following language appears in the judge's motion to strike this affidavit: "[S]tatements and opinions of legislators are not an appropriate source from which to discover the intent of the legislation, nor the meaning of language used therein, even where the language is not clear. Plunkett v. Old Colony Trust, 233 Mass. 471, 474 [1919]."

[10] Under the commission's rules, if, as a result of a preliminary investigation, the commission determines that formal proceedings should be instituted, the judge must be given written notice in concise language of the charges against him and an opportunity to respond. Operating Rules of the Commission on Judicial Conduct 11 and 12 (1979).

We assume that the Legislature intended to enact a workable and reasonably comprehensive statute. A requirement that the complainant have personal knowledge of the facts asserted would thwart the investigation of matters that call for attention. Admittedly, certain subjects that might warrant investigation might not involve a complaint against a particular, named judge, and the commission would not have the authority to investigate those subjects. However, we decline to construe the statutory authority of the commission so narrowly as to bar the commission from investigating otherwise proper complaints merely because the complainant did not have personal knowledge of the facts set forth in the complaint.

Although what we have said disposes of the single issue before us, we believe it appropriate to discuss the essential requirements of a valid complaint filed with the commission and to analyze the complaint in this case in light of these requirements. Clearly, the statute contemplates a complaint that makes specific charges of misconduct to which the judge can reasonably make a response. General references to alleged misconduct and references to particular, but unidentifiable, events will not suffice. In addition, the complaint must have sufficient reliability to warrant a determination by the commission that an investigation should be conducted. In exercising its judgment whether a complaint has sufficient reliability to warrant an investigation, the commission should consider a number of factors. Among those factors are: the extent to which the allegations of misconduct are based on the personal knowledge of the complainant or on reliable sources described by the complainant; the extent to which any of the allegations are corroborated by information known by or potentially available to the commission; the specificity of the allegations;[11] and the likelihood, in

---

[11] As we have said, the detail of the allegations bears also on the question whether the judge will reasonably be able to respond to the complaint.

the circumstances, that an investigation might disclose whether the allegations of misconduct are valid or groundless. Of course, the judge's response itself may have a significant bearing on the question whether an investigation should be undertaken. However, the commission need not await a judge's response before determining, in its discretion, to dismiss a complaint. In short, the commission must determine, in its discretion, whether there is sufficient cause to conduct an investigation based on its assessment of the information brought to its attention. It must be remembered that the question whether to conduct an investigation is a preliminary one, and that a new specification of charges must be made before the commission may proceed to a hearing. See note 10, *supra*.

In our view, the complaint in this case is not in a form appropriate for consideration by the commission. The complaint makes no allegations of misconduct but only states that "some of the allegations contained in this material may constitute allegations of judicial misconduct." There are extraneous matters in the transcript, especially matters involving other judges. Some of the matters involving the judge are referred to so generally that he could not reasonably make response to them. In all respects, the transcript of the television broadcast fails to make separate charges of misconduct in a form which would permit an orderly response. We do not say that none of the information in the transcript of the television broadcast could be presented in a satisfactory complaint or complaints; we simply say that the Dik complaint is not in a satisfactory form. On remand of this matter, the commission must determine whether the complaint can be amended, or a new complaint filed, which will allege misconduct both with sufficient specificity to permit the judge to make a reasonable response and with sufficient reliability to warrant investigation.

In our judgment, at least certain of the matters referred to in the complaint clearly warrant serious consideration for investigation. If the commission cannot or does not proceed with the investigation of certain of these matters, we could undertake to do so in the exercise of our constitutional and statutory obligations of general superintendence of the courts of the Commonwealth. We request counsel for the commission to furnish us with a copy of any amended or other complaint received by the commission concerning any matter involving the judge which is referred to in the transcript annexed to the complaint, and to advise us if and when the commission dismisses any such complaint or undertakes to conduct an investigation of such complaint. This request will not violate the confidentiality of the commission's proceedings because the judge has made the matter public by his commencement of this action. Indeed, the statute contemplates such a disclosure to this court where the commission requests this court to appoint special counsel to conduct an investigation. G. L. c. 211C, § 2, fifth par.

Nothing we say should be construed as an expression of opinion on the wisdom of the restrictions on the commission's authority to investigate alleged judicial misconduct which appear in G. L. c. 211C, § 2. See A.B.A. Special Committee on Evaluation of Disciplinary Enforcement, Problems and Recommendations in Disciplinary Enforcement 60-66, 71-73 (Final Draft 1970), which recommended that investigations of alleged misconduct by an attorney be permitted without requiring a specific, verified complaint.

A judgment shall be entered in the county court declaring that a complaint filed with the commission under G. L. c. 211C, § 2, need not be signed by a complainant who has personal knowledge of the contents of the complaint but declaring that the complaint in its present form should not be the basis for an investigation by the commission.

*So ordered.*