ELWOOD S. MCKENNEY *vs.* COMMISSION ON JUDICIAL
CONDUCT.[1]

Suffolk. December 7, 1979. — March 28, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Judge. Commission on Judicial Conduct. Practice, Civil,* Interlocutory
appeal. *Supreme Judicial Court,* Superintendence of inferior courts.

A single justice of this court did not abuse his discretion in declining to
review the sufficiency of an amended complaint filed with the Com-
mission on Judicial Conduct where no extraordinary justification was
shown which would warrant interlocutory review of the commission's
actions. [265-269] LIACOS, J., concurring.

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on May 14, 1979.

The case was heard by *Kaplan, J.*

*Thomas J. May* for the plaintiff.

*Terry Jean Seligmann,* Assistant Attorney General, for
the defendant.

BY THE COURT. The plaintiff, Elwood S. McKenney,
First Justice of the District Court Department, Roxbury Di-
vision, appeals from a single justice's denial of his applica-
tion for further declaratory relief.[2] As was the case on a

---

[1] The commission members at the time this action was first brought
were: Allan G. Rodgers, Esq., chairman; Florence R. Rubin, vice chair-
man; Carolyn K. Dik; Archie C. Epps, III; Hon. Edith W. Fine; Richard
D. Gelinas, Esq.; John M. Harrington, Jr., Esq.; Hon. Sanford N. Keedy;
and Hon. Elbert Tuttle.

[2] General Laws c. 231A, § 5, inserted by St. 1945, c. 582, § 1, provides in
part: "Further relief based on a declaratory judgment or decree may be
granted whenever necessary or proper. The application therefor shall be by
petition to a court having jurisdiction to grant the relief. If the application be
deemed sufficient the court shall, on reasonable notice, require any adverse
party whose rights have been adjudicated by the declaratory judgment or de-
cree to show cause why further relief should not be granted forthwith."

prior appeal, the plaintiff attacks the adequacy of a complaint against him filed with the Commission on Judicial Conduct (commission).[3]  The plaintiff claims that the present "amended complaint," filed following our remand of this matter to the commission, fails to satisfy the standards of specificity and reliability we have said are required by G. L. c. 211C.  See *McKenney* v. *Commission on Judicial Conduct,* 377 Mass. 790, 801-802 (1979).

The allegations of the amended complaint are grounded entirely on the same television broadcast that formed the basis of the original complaint.  The complaint again consists of a short, signed statement attached to a transcript of that broadcast, and the complainant (a commission member) again acknowledges that she has no personal knowledge of the truth or falsity of the matters alleged.  The new complaint, however, in contrast to the original, does set forth ten separate allegations.[4]

---

[3] The commission, established pursuant to G. L. c. 211C, § 1, inserted by St. 1978, c. 478, § 114, consists of three judges, three attorneys, and three lay persons.

[4] The complaint alleges that the judge: "(1) Used his judicial position to eliminate competition among bail bondsm[e]n in his court in order to financially benefit a bail bondsman named Lincoln Hinds; (2) Persistently refused to allow tape recordings in his courtroom as permitted as a matter of right by Rule 11 of the Initial Rules of Criminal Procedure for the District Courts of Massachusetts; (3) Repeatedly appointed two attorneys with whom he socialized in public, namely, Thomas J. Hannon and Harold Hakala, to represent indigent defendants in criminal matters, thereby showing or appearing to show favoritism toward these attorneys; (4) Failed to take remedial action against Assistant Chief Court Officer Joseph Drago, who did not report to work for approximately six of the twelve months preceding the screening of the so-called I-Team report; (5) Appointed Mary Ball as a temporary probation officer and promoted her to permanent status for reasons other than merit; (6) Appointed Marcia Scott as a temporary assistant chief probation officer for reasons other than merit; (7) Entered into an arrangement with Justice Henry P. Crowley of the Brookline Division of the District Court Department of the Trial Court to appoint the son of Justice Crowley as a court employee in exchange for the appointment by Justice Crowley of Victoria Bergland (a.k.a. Victoria Hart) as a court employee in the Brookline court; (8) Purchased a Volkswagen automobile from a defendant appearing before him, who could not reclaim that vehicle because of his inability to pay certain

The plaintiff filed with the commission a motion to dismiss this amended complaint. Some time thereafter he filed in the Supreme Judicial Court for the county of Suffolk a "Petition for Contempt or Other Further Relief," under G. L. c. 231A, § 5.

After hearing, the single justice granted the commission's motion to dismiss the plaintiff's petition on the basis that there was "no occasion for departing from the rule excluding premature court review of administrative activity." At the time of his decision, the single justice did not know that the commission had, two days previously, denied the plaintiff's motion to dismiss the complaint and had begun an investigation. On the basis of these actions by the commission, the plaintiff filed with the single justice a motion for reconsideration, arguing that his petition for further declaratory relief was the only available method for testing the sufficiency of the amended complaint. After hearing, this motion was denied. We affirm.

*Denial of interlocutory relief.* In our prior decision, while concluding that we should reach the merits of the plaintiff's request for declaratory relief, we had occasion to "stress . . . the extraordinary nature of this [previous] proceeding," and to note that we would "look with disfavor on attempted interlocutory review of commission actions in the future." *McKenney* v. *Commission on Judicial Conduct,* 377 Mass. 790, 794 (1979). We can find no basis on the record before us for concluding that the single justice abused his discretion by adhering to this general rule. See generally *Assuncao's Case,* 372 Mass. 6, 8-9 (1977); *East Chop Tennis Club* v. *Massachusetts Commission Against Discrimination,* 364 Mass. 444, 450-453 (1973).

We departed from our general policy in the prior case because the issue was one of first impression, presenting an

fines imposed by the court; (9) Used the power of his judicial office to secure ownership of a Cadillac Seville automobile at a price substantially below the fair market value for such an automobile; (10) Utilized court personnel, court facilities, and court telephones during normal working hours for personal business, including the preparation of food by court officers, and the sale of a boat."

issue "solely of statutory construction." *McKenney* v. *Commission on Judicial Conduct*, 377 Mass. 790, 792, 793-794 (1979).[5] By contrast the major focus of the present appeal looks only to the adequacy of the particular complaint now before the commission rather than to the broader issue of whether all such complaints must be grounded on personal knowledge. The lack of such a broad impact undercuts the need for declaratory relief. See *East Chop Tennis Club* v. *Massachusetts Commission Against Discrimination*, 364 Mass. 444, 450 (1973).

The rationale against interlocutory review, furthermore, is "particularly cogent" when a proceeding is still in "its earliest stage[s]," *Assuncao's Case*, 372 Mass. 6, 9 (1977), and the party seeking declaratory relief has access to additional administrative procedures which may correct or render moot any alleged error. The plaintiff's challenge to the sufficiency of the complaint in this case strikes at the earliest possible stages of the commission's procedures. "The immediate consequence of the filing of a complaint [accepted as valid by the commission] can be no more than the initiation of a confidential investigation by the commission." *McKenney* v. *Commission on Judicial Conduct*, 377 Mass. 790, 800 (1979). "It must be remembered that the question whether to conduct an investigation is a preliminary one, and that a new specification of charges must be made before the commission may proceed to a hearing." *Id.* at 802. Any error the commission may have made in evaluating the adequacy of the amended complaint would be rendered harmless should the commission's investigation lead it to dismiss the complaint's allegation as groundless.

In sum, the requirement that a party exhaust his administrative remedies prior to seeking judicial relief reflects "a sound principle of law and jurisprudence aimed at preserv-

[5] In the prior case, furthermore, the commission joined with the judge in asking that we rule on the question whether a complaint must be grounded on personal knowledge. The commission now opposes our reviewing on an interlocutory basis the adequacy of the particular complaint before it.

ing the integrity of both administrative and judicial processes." *Assuncao's Case,* 372 Mass. 6, 8 (1977). This principle cuts with particular force in the case of accusations of judicial misconduct, where the interests of both the public and the judge require that the issue before the commission be resolved in the most expeditious manner possible, without the delay that a liberal availability of interlocutory review would inevitably entail.[6] Frequent intervention by this court at the earliest stages of the commission's proceedings would undermine both the authority of the commission and public respect for its work. Therefore, we conclude that the commission should not be hampered by interlocutory appeals on preliminary matters, absent some extraordinary justification, not evidenced by the record before us.[7]

We add that the statutory prohibition against the commission's conducting any "investigation" before the judge has had the opportunity to review the complaint and respond in writing[8] does not preclude the commission's communicating with those persons who make allegations of judicial misconduct in either the electronic or print media. Broad and unsubstantiated allegations, no matter how sensational, do not become a sufficient basis for a complaint before the commission merely by being published or broadcast. Where such reports rely on specific allegations made

---

[6] In part, expeditious resolution of charges against judges is required because of limitations (not generally applicable to other public figures) on a judge's ability publicly to respond to allegations of misconduct.

[7] It appears that the Legislature had the need for expedition firmly in mind since the statute establishing the commission provides a detailed timetable which must be followed in resolving allegations of judicial misconduct. G. L. c. 211C, § 2, second and fifth pars. The fact that the Legislature did not limit the time within which an investigation must be conducted does not mean that the commission is free to conduct the investigation at a leisurely pace. The importance of the issue to the public and to the judiciary requires that the commission act promptly and complete its investigation without undue delay.

[8] The judge has thirty days from his notice of the complaint to respond in writing, and the commission may not investigate the matter until the judge has responded in writing or failed to do so within that time. G. L. c. 211C, § 2, fifth par.

by named persons, the commission should normally directly inquire of these persons to determine whether they need or desire assistance in filing a complaint.[9]

Finally, the plaintiff asks not only that we declare the amended complaint invalid but that we also bar all "further proceedings in this matter." It cannot be assumed, however, that termination of the commission's investigation would necessarily put an end to all proceedings in this matter. "If the commission cannot or does not proceed with the investigation of certain of [the allegations of misconduct], [this court] could undertake to do so in the exercise of our constitutional and statutory obligations of general superintendence of the courts of the Commonwealth." *McKenney v. Commission on Judicial Conduct*, 377 Mass. 790, 803 (1979). We have already indicated that "[i]n our judgment, at least certain of the matters referred to in the [first] complaint clearly warrant serious consideration for investigation." *Id.*

The plaintiff has not asked us to undertake the investigation of the charges against him under our general superintendence powers; were he to do so, we would give his request serious consideration. At a minimum, in view of the fact that the commission's proceedings have not been stayed since the date of our prior rescript, we think the commission should inform us of the progress of its investigation. Within fourteen days of the date of this rescript, the commission should report to this court and to the plaintiff the expected date by which it will have completed its investigation and determined whether or not "sufficient cause exists . . . that a hearing is warranted." G. L. c. 211C, § 2, ninth par. If the commission has found that such hearing is warranted,

---

[9] "We would regard as appropriate, and as not constituting an 'investigation,' any acts of assistance, by the commission or its secretary and staff, in the preparation of a complaint in a proper form. Rule 6 of the commission, approved by this court, authorizes the commission's secretary to 'furnish blank complaint forms to any person' and, if necessary, to 'assist the complainant in reducing the grievance to writing.'" *McKenney v. Commission on Judicial Conduct*, 377 Mass. 790, 795 n.4 (1979).

we and the plaintiff should be informed of the fact. In any event, we should be informed of the approximate date when we may expect the commission to "forward its final recommendation," if any,[10] to this court for our "consideration and further action, if any." G. L. c. 211C, § 2, ninth par. Since the plaintiff has chosen publicly to litigate this complaint, the forwarding of such a report as to the status of the commission's investigation and the future timetable for commission action does not violate the statutory requirements of confidentiality. See G. L. c. 211C, § 2, ninth par. *McKenney* v. *Commission on Judicial Conduct, supra.*

The order of the single justice denying the plaintiff's "Petition for Contempt or Other Further Relief" is affirmed.

*So ordered.*

LIACOS, J. (concurring). The genesis of this case is a television broadcast on January 11, 1979, which made allegations of misconduct against the plaintiff judge and two other judges. More than one year later the matter appears to remain stalled in its preliminary stage. The legal skirmishing which has ensued since the original complaint (based solely on that telecast) was filed on January 30, 1979, is partially described in the opinion of the court and in our previous opinion, *McKenney* v. *Commission on Judicial Conduct,* 377 Mass. 790 (1979) (*McKenney I*). The court, in *McKenney I,* granted declaratory relief but expressed the view that it looked "with disfavor on attempted interlocutory review of commission action in the future." *McKenney I, supra* at 794. I joined in that view because I felt, as the present opinion states, that the interests of both the judge

---

[10] By insisting that the commission furnish us with a timetable for a possible hearing and recommendation to this court, we do not intend to intimate any view that such a hearing or recommendation will in fact be required. In light of its past experience, the commission may wish to reexamine its operating rules to determine if the rules could be amended so as to expedite the processing of complaints.

and the public require expeditious resolution of charges of judicial misconduct. I hold to that view and its corollary that to allow freely interlocutory appeals on preliminary matters is not sound judicial policy.

To accept the validity of such policy considerations, however, does not warrant a failure to speak to some of the significant issues which are presented by this appeal. The plaintiff has a substantial stake here, and he is entitled to insist that the commission adhere to the law. Additionally, the issue he persists in raising is, contrary to what the court indicates today, one of significance to the public, and to the judicial system. It is an issue which the parties have argued. It deserves to be addressed, and the commission clearly requires further guidance. *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943). It appears to me that the delay in this case is not attributable to frivolous claims for interlocutory relief. Rather, much of the delay seems attributable to what I view as a certain obstinacy on the part of at least some members of the Commission on Judicial Conduct (commission).

The court relies on *Assuncao's Case*, 372 Mass. 6 (1977); *East Chop Tennis Club* v. *Massachusetts Commission Against Discrimination*, 364 Mass. 444 (1973), and *McKenney I*, as the basis of its opinion that this case involves an interlocutory appeal which properly was dismissed by the single justice. The court states, "The rationale against interlocutory review, furthermore, is 'particularly cogent' when a proceeding is still in 'its earliest stage[s]' . . . and the party seeking declaratory relief has access to additional administrative procedures which may correct or render moot any alleged error." *Supra* at 266.[1] Later, the court states: "In

---

[1] The fact is that after the initial action of the single justice dismissing the plaintiff's complaint, the commission denied the plaintiff's motion before the commission to dismiss the complaint against him. The plaintiff's appeal here is from the denial of the petition for reconsideration by the single justice filed after that commission action. There is no indication of any possible further commission action on the issue of the validity of the complaint filed against the plaintiff.

sum, the requirement that a party exhaust his administrative remedies prior to seeking judicial relief reflects 'a sound principle of law and jurisprudence aimed at preserving the integrity of both administrative and judicial processes,' *Assuncao's Case,* 372 Mass. 6, 8 (1977)." *Supra* at 266-267.

In relying on *Assuncao* and *East Chop,* the court overlooks a number of fundamental points. First, although the court's opinion treats the commission as an "agency" and refers to "administrative activity," *supra* at 265, the commission is not an "agency" as was the member of the Industrial Accident Board in *Assuncao* or the Massachusetts Commission Against Discrimination in *East Chop.* The commission, created by G. L. c. 211C, § 1, performs neither adjudicatory nor regulatory functions as defined by G. L. c. 30A, § 1 (1) and (5). General Laws c. 30A, § 1 (1), explicitly excludes from the definition of "adjudicatory proceeding" "proceeding[s] solely to determine whether the agency shall institute or recommend institution of proceedings in a court." General Laws c. 211C, § 2, limits the commission to such a function by providing "[u]pon completion of any investigation, the commission shall recommend an appropriate disposition of the matter under investigation with a statement of its reasons and shall forward its final recommendation with a statement of its reasons to the complainant and to the supreme judicial court in each case for its consideration and further action, if any."

*McKenney I,* relied on by the court here, thus must be viewed not as holding that the exhaustion doctrine applies to this commission as a matter of law, but simply that the court, using that doctrine as an analogy, will refrain as a matter of policy from allowing interlocutory appeals which will defeat the purpose of efficient, fair, and expeditious disposition of matters by the commission under its legislative mandate. Yet, the court in applying the exhaustion doctrine here in rigid and formulaic fashion declines to recognize that even where an administrative agency is involved, interlocutory appeals will be heard in various circumstances. *East Chop Tennis Club, supra* at 451. For exam-

ple, where the facts pertaining to jurisdiction are not substantially in dispute, it is appropriate to grant declaratory relief, notwithstanding the failure of the parties to exhaust administrative remedies. *Lahey Clinic Foundation, Inc.* v. *Health Facilities Appeals Bd.,* 376 Mass. 359, 371-372 (1978). See also *Ciszewski* v. *Industrial Accident Bd.,* 367 Mass. 135, 141 (1975); *Massachusetts Bay Transportation Authority* v. *Labor Relations Comm'n,* 356 Mass. 563, 564 (1970); *St. Luke's Hosp.* v. *Labor Relations Comm'n,* 320 Mass. 467 (1946). From the very beginning of this extended litigation, the plaintiff has challenged the jurisdiction of the commission to act except on a valid complaint. Although he did not persuade the court in *McKenney I* to accept his reasoning that personal knowledge is a requirement for a valid complaint, he did prevail as to the invalidity of the first complaint.[2] His present contention is that the second complaint is not in compliance with our earlier mandate, and as I understand it, that the second complaint being invalid, the commission lacks jurisdiction to proceed.[3] Whether one accepts the arguments of the plaintiff that the exhaustion doctrine does not apply because his challenge is to the commission's jurisdiction to proceed, or follows my

[2] "In our view, the complaint in this case is not in a form appropriate for consideration by the commission." *McKenney I,* at 802.

[3] The plaintiff's first action was brought under G. L. c. 231A. The second action is specifically authorized by c. 231A, § 5, as amended by St. 1974, c. 630, § 3, which provides: "Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree to show cause why further relief should not be granted forthwith. . . . In addition to the foregoing when a decree has already been entered declaring an administrative practice or procedure as defined in section two to be illegal, and a person not a party to the original action involving said practice or procedure is adversely affected by the same or similar practice or procedure by the same agency, said person may seek relief under this chapter by filing a petition for contempt against the agency or agent continuing said practice or procedure after the entry of said decree."

view that the strictness of the doctrine does not apply to this commission, it seems clear that the public interest requires further discussion as to the validity of this complaint in light of the unique statutory framework under which the commission must function.

I now express my views on the validity of the plaintiff's claim. The commission is entirely a creature of statute. G. L. c. 211C. The underlying validity of this statute has not been challenged by either party. While this court has both constitutional and statutory powers to operate in the same area,[4] this commission draws its powers and mandate solely from the statutory enactment and may not draw on any power vested in this court. *McKenney I,* 377 Mass. 790, 794 n.3 (1979). The court has reserved the power to act independently under its constitutional and statutory authority. *Id.* at 803. The plaintiff argues that absent a valid complaint filed in accordance with the statute, the commission is without jurisdiction and has no power to act. G. L. c. 211C, § 2.[5] In interpreting this section of the statute in *McKenney I,* we recognized that absent a valid complaint, the commission could not act. "Admittedly, certain subjects that might warrant investigation might not involve a complaint against a particular, named judge, and the commission would not have the authority to investigate those subjects." *McKenney I, supra* at 801.[6] Thus we held that

---

[4] Prior to the effective date of G. L. c. 211C, the court had appointed a committee on judicial responsibility in the exercise of its inherent powers. S.J.C. Rule 3:17, as amended, 371 Mass. 905 (1977). That committee no longer is operative and has turned over its pending matters to the commission.

[5] Section 2 provides in pertinent part: "Notwithstanding any other provision of law, the commission shall investigate *upon complaint of any person,* including from its own membership, the action of any judge that may . . . bring the judicial office into disrepute or constitute a breach of the Canons of Judicial Ethics as promulgated by the supreme judicial court" (emphasis supplied).

[6] We also stated: "This statutory pattern indicates that the commission has no authority to 'investigate' alleged judicial misconduct until a complaint has been filed with it." *Id.* at 795.

the first complaint, being invalid, could not serve as the basis of commission action. In so doing, we stated that, although a complaint need not be based on the personal knowledge of the complainant, as plaintiff had argued, a complaint must meet two criteria: (1) the complaint must make specific charges of misconduct to which the judge reasonably can make a response; and (2) it must have sufficient reliability to warrant a determination by the commission that an investigation should be conducted. The specificity criterion assures that the judge receives adequate notice of the subject matter of the proposed investigation. The reliability requirement is aimed at frivolous claims whose investigation might needlessly disrupt the judge's activities, undermine public and judicial confidence in the disciplinary apparatus, and waste commission resources on pursuits not sanctioned by the Legislature. Thus, the two criteria are not merely technical rules of pleading, but may be jurisdictional matters bound up with the commission's authority to act.

The plaintiff argues that the second complaint fails on both requirements. As to the question of specificity,[7] it is my view that the complaint satisfies the minimum requirements set forth in *McKenney I*. But the complaint must fall, nevertheless, if it lacks sufficient indicia of reliability. The present complaint is defective in this regard. In *McKenney I*, we listed some of the factors to be utilized to determine whether a complaint had sufficient reliability to warrant an investigation. We stated:

"Among those factors are: the extent to which the allegations of misconduct are based on the personal knowledge of the complaint[8] or on reliable sources described by the complaint;[9] the extent to which any of the allegations are

---

[7] The allegations are quoted in the court's opinion at note 4, *supra* 264.

[8] Present complaint: None.

[9] Present complaint: None. The complaint merely refers to the telecast. Certainly unsubstantiated allegations published by the news media are not "reliable sources." The court apparently agrees: "Broad and unsubstantiated allegations, no matter how sensational, do not become a sufficient basis for a complaint before the commission merely by being published or broadcast." *Supra* at 267.

corroborated by information known by[10] or potentially available to the commission; [11] the specificity of the allegations; [12] and the likelihood, in the circumstances, that an investigation might disclose whether the allegations of misconduct are valid or groundless."[13] *McKenney I, supra* at 801-802.

Of the six factors listed by the court, only one appears to have been met, and that one factor is marginally satisfied. I conclude, therefore, that this complaint, like the first signed by Carolyn K. Dik, is invalid as a basis for proceedings under G. L. c. 211C.[14]

The plaintiff would have us conclude our inquiry at this point. The prayers of his petition ask that we should bar "further proceedings." In seeking to quash these proceedings, the plaintiff overlooks a number of salient points. The first is that this court has stated: "In our judgment, at least certain of the matters referred to in the [first] complaint clearly warrant serious consideration for investigation." *McKenney I, supra* at 801. Second, this court, pursuant to the operating rules of the commission and at the commission's request, on July 2, 1979, appointed special counsel to conduct such an investigation.[15] Third, the commission,

---

[10] No such information is shown in this record as information "known" by the commission, nor does the complaint or the commission allege such knowledge.

[11] None shown; whether any of the persons interviewed in the telecast, or the reporters who created it are either (1) available, (2) willing to give testimony or evidence, or (3) have reliable information to give is neither alleged nor shown.

[12] As I have stated, the complaint barely meets this requirement. The remaining aspects of vagueness and generality in the allegation militate against weighing this factor heavily in favor of validity.

[13] The present complaint leaves the answer to this factor to pure speculation and conjecture.

[14] The plaintiff sought an adjudication of civil contempt before the single justice as to the defendant Dik. Wisely, I think, he has not argued that issue before the full court, and it is thus waived.

[15] See G. L. c. 211C, § 2; Commission on Judicial Conduct, Operating Rule 5 (c) (1979).

under G. L. c. 211C, § 2, can, at most, report its final recommendation to this court for its consideration and action. Fourth, this court has also indicated that: "If the commission cannot or does not proceed with the investigation of certain of these matters, we could undertake to do so in the exercise of our constitutional and statutory obligations of general superintendence of the courts of the Commonwealth."[16] Also, to quash any further proceedings at this stage would serve neither the interests of justice nor expedition. Thus, I concur in the result reached by the court because the matter is still in the investigative stage. I see no wisdom in starting all over again, especially since the plaintiff has shown no prejudice to have arisen from these proceedings. I am mindful, also, that, should the court take the matter under its own powers, it would most likely follow past practice and appoint counsel to investigate the matter who would then report to the court for further action, if warranted. The court would be wise to include in its remand instructions that the judgment not only be affirmed but include a declaration that: (1) if the investigation is not completed, together with a final recommendation from the commission within three months of the rescript in this case, the single justice may order the transfer of all reports, evidence, and data collected by investigating counsel to the full court for consideration under its plenary powers; (2) either party may move immediately on entry of rescript for a decision by the full court on whether it would be appropriate in light of the delay already caused to order the matter transferred to the jurisdiction of the full court forthwith.

---

[16] McKenney I, at 803. We have exercised such power on occasions prior to the enactment of G. L. c. 211C. See, e.g., *Matter of DeSaulnier*, 360 Mass. 757 (1971); *Matter of Bonin*, 375 Mass. 680 (1978).